IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **JENNIFER LYNN COMBS,**<br>   **Plaintiff,**<br><br>**v.**<br><br>**CHARLES W. GREGORY,**<br>**individually and in his official**<br>**capacity as Chief of Police of the City**<br>**of Trinidad, Texas;**<br>**CAMERON BECKHAM, individually**<br>**and in his official capacity as and**<br>**Officer, Trinidad Police Department;**<br>**MARIE BANNISTER, individually**<br>**and in her official capacity as City**<br>**Councilwoman, City of Trinidad,**<br>**Texas;**<br>**and THE CITY OF TRINIDAD,**<br>**TEXAS,**<br>   **Defendants.** | **Civil Action No. 6:26-cv-235**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**
FOR VIOLATIONS OF 42 U.S.C. §§ 1983 AND 1985(3)

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................2

TABLE OF AUTHORITIES .........................................................................................3

I. INTRODUCTION ......................................................................................................5

II. JURISDICTION AND VENUE..............................................................................6

III. PARTIES .................................................................................................................7

IV. FACTUAL ALLEGATIONS ................................................................................8

    A. Background: Jennifer Combs and Her Journalism............................................8

    B. The City of Trinidad's Water Crisis.................................................................9

    C. Plaintiff's Protected Reporting and the Facebook Post...................................10

    D. The City's Boil Water Notice Corroborates Plaintiff's Reporting...................11

    E. The Retaliatory Prosecution.............................................................................12

    F. Defendant Beckham's Admitted Ignorance of First Amendment Law............13

    G. Defendant Gregory's Warrant Shopping and Circumvention of the Municipal Court ....................................................................................................................14

    H. Defendant Gregory's Official Social Media Admission of Retaliatory Motive .................................................................................................................................16

    I. Defendant Bannister's Role in the Conspiracy.................................................17

    J. The City of Trinidad's Pattern and Practice of Retaliation Against Critics and Whistleblowers .....................................................................................................18

    K. Additional Evidence of Defendant Gregory's Contempt for Constitutional Rights....................................................................................................................20

V. PRESERVATION OF NOTWITHSTANDING CLAUSE ARGUMENT ON QUALIFIED IMMUNITY ........................................................................................21

VI. CAUSES OF ACTION........................................................................................23

    COUNT I....................................................................................................................23

    COUNT II...................................................................................................................25

    COUNT III.................................................................................................................27

    COUNT IV.................................................................................................................29

    COUNT V...................................................................................................................33

        a. Direct Policy Through the Actions of a Final Policymaker..........................33

b. Failure to Train.................................................................................................34

c. Widespread Custom and Practice of Retaliatory Suppression.......................35

d. Ratification.....................................................................................................35

COUNT VI ..............................................................................................................36

COUNT VII .............................................................................................................37

VII. DAMAGES .................................................................................................................39

VIII. PRAYER FOR RELIEF..............................................................................................41

JURY DEMAND ...................................................................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)................................................................ 26

*City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)........................................................... 14, 34

*City of Houston v. Hill*, 482 U.S. 451, 461 (1987) .......................................................................... 20

*Cohen v. California*, 403 U.S. 15, 24–25 (1971)............................................................................. 20

*Connick v. Myers*, 461 U.S. 138, 145 (1983)............................................................................. 11, 24

*Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) ....................................................... 30

*Franks v. Delaware*, 438 U.S. 154, 164–165 (1978)...................................................................... 32

*Gerstein v. Pugh*, 420 U.S. 103, 111–112 (1975).......................................................................... 30

*Gonzalez v. Trevino*, 602 U.S. 653 (2024).............................................................................. 13, 24

*Illinois v. Gates*, 462 U.S. 213, 238 (1983) ................................................................................... 30

*Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018).............................................................. 13,24

*Malley v. Briggs*, 475 U.S. 335, 344–345 (1986) .......................................................................... 32

*Manuel v. City of Joliet*, 580 U.S. 357 (2017) ............................................................................... 30

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................................................... 8, 20,33

*Near v. Minnesota*, 283 U.S. 697, 713 (1931) ............................................................................... 26

*Nieves v. Bartlett*, 587 U.S. 391 (2019) .................................................................................. 13, 24

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986)........................................... 21, 34, 36

*Pierson v. Ray*, 386 U.S. 547 (1967) ............................................................................................. 22

*Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) ................................................ 14

*Rogers v. Jarrett*, 63 F.4th at 977–78 (Willett, J., concurring).................................................... 22

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995).................. 17, 26

*Snyder v. Phelps*, 562 U.S. 443, 452 (2011).......................................................................... 11, 24

**Statutes**

Texas Penal Code § 42.06............................................................................... passim

**Treatises**

Alexander Reinert, Qualified Immunity and Federalism, 111 Cal. L. Rev. 201,
220–30 (2023)....................................................................................................24

## I. INTRODUCTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) by Plaintiff Jennifer Lynn Combs, a working journalist and resident of Navarro County, Texas, against Trinidad Police Chief Charles W. Gregory, Trinidad Police Officer Cameron Beckham, Trinidad City Councilwoman Marie Bannister, and the City of Trinidad, Texas, for systematic violations of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution.

2.      This case arises from the weaponization of state criminal law to silence a journalist who dared to inform her community about serious and credible public safety concerns regarding the municipal water supply — concerns subsequently validated by the City of Trinidad's own issuance of a boil water notice. Rather than address the water quality crisis, Defendants manufactured criminal charges against Mrs. Combs under a statute that, on its plain face, does not apply to her conduct.

3.      The charges against Mrs. Combs are not the product of legitimate law enforcement. They are the product of political retaliation: coordinated by a police chief who openly declared on a public governmental social media platform that reporting credible public safety information constitutes a felony; carried out by an investigator who admitted under oath that he operates in deliberate ignorance of

First Amendment law; and instigated by a City Councilwoman who harbors documented personal animosity toward Mrs. Combs and whose own family's ties to the city's water infrastructure give her a powerful motive to suppress exactly the kind of reporting Mrs. Combs engaged in.

4.      The City of Trinidad bears direct institutional responsibility for these violations. Through policy, custom, and the deliberate failures of its senior policymaker, the City has established an entrenched pattern of retaliating against those who expose governmental misconduct, financial irregularities, and failures in public services. That pattern is reflected in the prosecution of Mrs. Combs, the removal of a city administrator for exposing financial irregularities, the constructive termination effort against a municipal judge who refused to participate in unconstitutional prosecutions, and the separate arrest of a citizen for holding a sign outside the Trinidad City Hall and Police Department HQ reading "Fuck Bad Cops" — speech that is unambiguously protected by the First Amendment.

5.      Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## II. JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985(3).

7.     This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8.     Venue is proper in the Eastern District of Texas, Tyler Division, pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Henderson County and Navarro County, Texas. The City of Trinidad, Texas, is located in Henderson County, which lies within the Eastern District of Texas, Tyler Division. Plaintiff resides in Navarro County, Texas, which also lies within this district and division.

### III. PARTIES

9.     Plaintiff Jennifer Lynn Combs is a natural person, a working journalist, and a resident of Navarro County, Texas. She is the subject of the criminal prosecution described herein and the primary target of Defendants' retaliatory scheme.

10.    **Defendant Charles W. Gregory** is, and at all relevant times was, the Chief of Police of the City of Trinidad Police Department, the senior policymaker for that department, and a former City Administrator of the City of Trinidad. He is sued in both his individual and official capacities. At all relevant times, he acted under color of state law within the meaning of 42 U.S.C. § 1983.

11.    **Defendant Cameron Beckham** is, and at all relevant times was, an officer employed by the Trinidad Police Department. He served as the lead

investigator in the criminal investigation of Mrs. Combs, at the direction and behest of Defendant Gregory. He is sued in both his individual and official capacities. At all relevant times, he acted under color of state law within the meaning of 42 U.S.C. § 1983.

12.     **Defendant Marie Bannister** is, and at all relevant times was, a duly elected member of the City Council of the City of Trinidad. She is a known and persistent critic of Plaintiff who participated in and instigated the conspiracy to manufacture criminal charges against Plaintiff to silence her journalism. She is sued in both her individual and official capacities. At all relevant times, she acted under color of state law within the meaning of 42 U.S.C. § 1983.

13.     **Defendant City of Trinidad, Texas,** is a municipal corporation organized under the laws of the State of Texas. It is responsible for the policies, customs, and practices of the Trinidad Police Department and for the constitutional torts of its policymakers acting in their official capacities. The City is a "person" subject to suit under 42 U.S.C. § 1983 pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## IV. FACTUAL ALLEGATIONS

### A. Background: Jennifer Combs and Her Journalism

14.     Jennifer Lynn Combs is a working journalist well known throughout Navarro County and surrounding communities for her persistent and principled

reporting on matters of public concern. Her work consistently addresses issues of clear and compelling importance to the citizens of the region.

15. For a substantial period prior to the events described herein, Mrs. Combs has been a vocal and persistent critic of high-ranking officials within the City of Trinidad, including Defendants Gregory and Bannister. Her reporting has scrutinized their conduct, questioned their decisions, and held them publicly accountable on matters ranging from governance and financial management to public safety and the delivery of essential municipal services.

16. As a direct and foreseeable consequence of her journalism, Mrs. Combs has attracted the documented enmity of those whose conduct she reports on. Defendants Gregory and Bannister have demonstrated a sustained and documented pattern of hostility toward Mrs. Combs rooted in her reporting.

## **B. The City of Trinidad's Water Crisis**

17. The City of Trinidad has been experiencing significant, ongoing, and well-documented problems with its municipal water supply. These problems present a serious and unresolved public health emergency.

18. Defendant Marie Bannister's son, Jerry Bannister, is a member of the Trinidad Economic Development Board. In statements made on the record, Mr. Bannister admitted that the City of Trinidad's water supply contains asbestos — a

severe and well-recognized public health hazard for which there is no safe level of human consumption.

19.    Defendant Bannister is fully and personally aware of the water quality crisis afflicting the City of Trinidad, including the presence of asbestos in the water supply, by virtue of her son's position, his on-the-record statements, and her own role as a City Councilwoman responsible for overseeing the delivery of municipal services. Notwithstanding this knowledge, Defendant Bannister worked to suppress public reporting about the water quality crisis rather than address it.

### C. Plaintiff's Protected Reporting and the Facebook Post

20.    At a time relevant to this Complaint, Mrs. Combs received credible reports from members of the commuity regarding the safety of the City of Trinidad's drinking water, including accounts that at least one individual had been hospitalized as a result of consuming the water.

21.    Acting in her capacity as a journalist and in service of the public's fundamental right to know about matters of vital community concern, Mrs. Combs published a post on Facebook informing the public of these reports. The post conveyed information she had received directly from community members concerning the quality of the municipal water supply and the alleged hospitalizations resulting from its consumption.

22.     The Facebook post addressed a matter of the highest possible public concern: the safety of the community's drinking water. Such speech "occupies the highest rung of the hierarchy of First Amendment values" and is entitled to the fullest constitutional protection. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011); *Connick v. Myers*, 461 U.S. 138, 145 (1983).

23.     Mrs. Combs did not fabricate an emergency. She did not summon emergency responders. She did not trigger evacuations. She reported — accurately and in good faith — what community members had told her about the safety of their water, performing the most basic and constitutionally valued function of a journalist: informing the public about matters of genuine public safety concern.

24.     Texas Penal Code § 42.06, the statute under which Mrs. Combs was charged, is narrowly directed at persons who knowingly initiate a false emergency report that causes an actual emergency response — for example, falsely reporting a fire, explosion, or similar incident. It has no application whatsoever to the act of a journalist sharing community safety information with the public through social media. No good-faith application of the statute reaches Mrs. Combs' conduct.

**D. The City's Boil Water Notice Corroborates Plaintiff's Reporting**

25.     Shortly after Mrs. Combs published her Facebook post about the safety of the City's water supply, the City of Trinidad issued an official boil water notice for the municipal system.

26.    A boil water notice is issued by governmental authority when the water supply is, or may be, unsafe for human consumption. The City's issuance of that notice directly and powerfully corroborates Mrs. Combs' reporting and is wholly inconsistent with the assertion that her public statements were false or constituted a fabricated emergency.

27.    Additionally, multiple citizens posted replies to the Trinidad Police Department's and City of Trinidad City Hall's own social media posts stating that they had personally been hospitalized or affected as a result of consuming the City's water. These citizen statements — published on the City's official law enforcement social media page — further confirm the accuracy and good faith of Mrs. Combs' reporting.

### E. The Retaliatory Prosecution

28.    Defendant Gregory, acting in his capacity as Chief of Police and senior policymaker for the Trinidad Police Department, directed Defendant Beckham to investigate and pursue criminal charges against Mrs. Combs arising from her Facebook post about the City's water supply.

29.    The charge brought against Mrs. Combs under Texas Penal Code § 42.06 is legally frivolous on its face. The statute does not apply to Mrs. Combs' conduct. Any officer exercising good-faith professional judgment and even minimal familiarity with First Amendment principles would have recognized that

no basis for prosecution existed and that initiating such a prosecution would violate clearly established constitutional law.

30.     The decision to charge Mrs. Combs was not a product of legitimate law enforcement judgment. It was an act of deliberate political retaliation driven by Mrs. Combs' history of critical journalism directed at Defendants Gregory and Bannister, and coordinated through a conspiracy among all individual Defendants. *See Gonzalez v. Trevino*, 602 U.S. 653 (2024); *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018); *Nieves v. Bartlett*, 587 U.S. 391 (2019).

31.     A person of ordinary firmness would unquestionably be deterred from engaging in constitutionally protected journalistic activity — including reporting on municipal water safety — by the prospect of being criminally charged with a state jail felony for doing so.

### F. Defendant Beckham's Admitted Ignorance of First Amendment Law

32.     On May 13, 2026 — the day after the press release announcing the charges against Mrs. Combs — Defendant Beckham, the lead investigator in the criminal matter, made admissions that he does not consider, and is not aware of, current case law governing the statutes he enforces.

33.     Specifically, Sergeant Robert McCumseh admitted that the Department has not received First Amendment training in several years and that First Amendment principles played no role in his investigative decision-making.

34.     These admissions are constitutionally dispositive. The decision to investigate and charge a journalist for publishing a Facebook post about a matter of undeniable public concern was made by an officer who, by his own admission, was operating in a state of deliberate ignorance of the constitutional constraints on his authority.

35.     Beckham's acknowledged lack of First Amendment training is directly and causally attributable to the deliberate policies and customs of Defendant City of Trinidad and Defendant Gregory, as senior policymaker. The failure to provide constitutionally adequate training on the First Amendment — particularly for officers investigating and enforcing statutes with direct implications for protected speech — constitutes deliberate indifference to the known and obvious risk that untrained officers will violate citizens' constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989); *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001).

**G. Defendant Gregory's Warrant Shopping and Circumvention of the Municipal Court**

36.     Rather than present the warrant application in this matter to the City of Trinidad's own municipal judge — an officer who has been openly critical of Defendant Gregory's unconstitutional law enforcement practices — Defendant

Gregory deliberately and intentionally sought out a Justice of the Peace to sign the arrest warrant against Mrs. Combs.

37.    The Justice of the Peace selected by Defendant Gregory had pre-existing political conflicts and documented public disagreements with Mrs. Combs prior to the warrant application. Defendant Gregory was aware of these conflicts and selected this magistrate because of, not despite, them.

38.    Defendant Gregory's deliberate selection of a judicially compromised magistrate — one with documented personal and political opposition to the target of the warrant — rather than presenting the application to the City's own municipal judge, reflects Gregory's awareness that the warrant application was constitutionally deficient and his calculated effort to ensure issuance of a warrant that would not survive neutral judicial scrutiny.

39.    The circumvention of the municipal judge was not accidental. Defendants Bannister and Gregory separately engaged in an ongoing effort to constructively terminate the municipal judge's employment, at least in part because the judge has refused to participate in Defendant Gregory's unconstitutional law enforcement actions. This coordinated pressure on judicial officers is itself evidence of the conspiracy described herein. Defendant Gregory filed a complaint against Bivens towards this goal, then later retracted the complaint to avoid discovery of his involvement.

### H. Defendant Gregory's Official Social Media Admission of Retaliatory Motive

40.    The Trinidad Police Department maintains an official Facebook page. Defendant Gregory was responsible for and administered that page in his official capacity as Chief of Police at all times relevant to this complaint.

41.    Following Mrs. Combs' arrest, the Trinidad Police Department's official Facebook page published a post authored or authorized by Defendant Gregory stating that Mrs. Combs was "arrested for stating that our water was causing people to be hospitalized due to bacteria in our water. Which was false and caused a panic and alarm to the public."

42.    This post constitutes an official governmental admission that the basis for Mrs. Combs' arrest was her public statements about the safety of the community's water supply — i.e., her constitutionally protected speech.

43.    The same post further stated that communicating such information of public concern about the City's water "is a state jail felony." This statement, made by the senior policymaker of the Trinidad Police Department on the Department's official governmental platform, constitutes an official governmental threat against any citizen, journalist, or whistleblower who would report on — or merely repeat — community concerns about the City's water quality. It is a textbook example of the viewpoint-based governmental suppression of protected speech that the First

Amendment was designed to prevent. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995).

44.     No evidence of "panic and alarm" — beyond the ordinary and constitutionally protected public discussion of a genuine matter of community concern — has ever surfaced in connection with Mrs. Combs' Facebook post. To the contrary, the community response was precisely what the First Amendment is designed to facilitate: informed public discussion of a public health emergency. Multiple citizens confirmed, in replies to the TPD's own posts, that they had been hospitalized as a result of consuming the City's water. Even if the post had resulted in "panic and alarm" in the community, it was based on the protected speech of a journalist communicating a matter of public concern.

### I. Defendant Bannister's Role in the Conspiracy

45.     Defendant Marie Bannister is a City Councilwoman who has long maintained a documented personal and political animus toward Mrs. Combs arising from Plaintiff's journalism critical of City officials, including Defendant Bannister herself.

46.     Defendant Bannister is intimately and personally aware of the water quality crisis afflicting Trinidad. Her son, Jerry Bannister, a member of the Trinidad Economic Development Boare and President of the Planning and Zoning Commission, has admitted on the record that the City's water supply contains

asbestos and other lead contaminants. Defendant Bannister has therefore known about the City's water problem through both familial and official channels.

47.    Despite — or more precisely, because of — this knowledge, Defendant Bannister conspired with Defendant Gregory to manufacture criminal charges against Mrs. Combs in order to suppress Plaintiff's reporting about the water quality crisis and to retaliate against her for years of journalism critical of City officials.

48.    Defendant Bannister's participation in the conspiracy to silence Mrs. Combs is consistent with and constitutes part of a broader documented pattern of retaliatory conduct in which Defendant Bannister has engaged against persons who expose governmental misconduct in the City of Trinidad.

## J. The City of Trinidad's Pattern and Practice of Retaliation Against Critics and Whistleblowers

49.    The retaliatory prosecution of Mrs. Combs is not an isolated event. It is the most recent and most constitutionally egregious manifestation of an entrenched, deliberate, and longstanding governmental practice of retaliating against citizens, public employees, elected officials, and members of the press who expose governmental misconduct and failures within the City of Trinidad.

50.    Defendant Bannister led the effort to remove the City of Trinidad's previous city administrator from office. That administrator was removed as a direct

consequence of her disclosure of financial irregularities within the City —

precisely the type of disclosure that the First Amendment, sound governance, and

the public interest demand be protected, not punished.

51.    Defendant Bannister is currently engaged in a deliberate effort to

constructively terminate the employment of the City of Trinidad's municipal judge

in concert with Leah Melton, who is not yet named as a Defendant in this case.

This effort is directly connected to the municipal judge's refusal to participate in

Defendant Gregory's unconstitutional law enforcement actions and, upon

information and belief, her refusal to sign constitutionally deficient warrant

applications. Constructive termination of a judicial officer for acting with fidelity

to the law is itself an unconstitutional act that forms part of the pattern and practice

alleged herein.

52.    Taken together, the removal of the city administrator for exposing

financial irregularities, the constructive termination of the municipal judge for

refusing to participate in unconstitutional prosecutions, and the criminal

prosecution of a journalist for reporting on water safety constitute a coherent,

deliberate, and entrenched policy of governmental retaliation against those who

challenge or expose the misconduct of City officials.

53.    This pattern and practice is sufficiently widespread, longstanding, and deliberately pursued to constitute a municipal custom for purposes of *Monell* liability. *Monell*, 436 U.S. at 694 (1978).

**K. Additional Evidence of Defendant Gregory's Contempt for Constitutional Rights**

54.    The prosecution of Mrs. Combs is not an isolated reflection of Defendant Gregory's disregard for the constitutional rights of persons under his law enforcement authority.

55.    In a separate and recent incident, Defendant Gregory oversaw the arrest of a man for the act of uttering profanity and holding a sign reading "Fuck Bad Cops." This expression — however offensive it may be to law enforcement officers — is unambiguously protected by the First Amendment. The Supreme Court has held that offensive speech, including profanity, is constitutionally protected; criticism of law enforcement is not only protected but lies at the very core of the First Amendment. *Cohen v. California*, 403 U.S. 15, 24–25 (1971); *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). The arrest of a citizen for holding such a sign is a paradigmatic act of unconstitutional viewpoint-based suppression of protected political speech.

56.    This incident, considered alongside the prosecution of Mrs. Combs, demonstrates that Defendant Gregory operates with a settled and deliberate

practice of suppressing speech critical of his department and of governmental authority. That practice has gone uncorrected by the City of Trinidad and its governing body, rendering it a municipal custom for which the City bears direct Monell liability.

57.    Defendant Gregory's status as both the senior policymaker for the Trinidad Police Department and a former City Administrator means that his deliberate unconstitutional practices are directly attributable to the City. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986).

## V. PRESERVATION OF NOTWITHSTANDING CLAUSE ARGUMENT ON QUALIFIED IMMUNITY

58.    To the extent any Defendant raises qualified immunity as a defense in this action, Plaintiff expressly preserves, and incorporates herein as if set forth at length, the argument that the doctrine of qualified immunity lacks statutory authority and is constitutionally and historically unsupportable as applied to suits under 42 U.S.C. § 1983.

59.    The original Civil Rights Act of 1871, Ch. 22, 17 Stat. 13 — the predecessor to the modern 42 U.S.C. § 1983 — provided that every person who violated civil rights under color of law "notwithstanding any such law, ordinance, regulation, custom, or usage of the State to the contrary" shall "be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." This express "notwithstanding" clause affirmatively displaced any

contrary state or common-law rule — including common-law immunity defenses — from the reach of the statute. *See Rogers v. Jarrett*, 63 F.4th 971, 974–78 (5th Cir. 2023) (Willett, J., concurring); Alexander Reinert, Qualified Immunity and Federalism, 111 Cal. L. Rev. 201, 220–30 (2023).

60.    This critical "notwithstanding" language was omitted from the statute during the 1874 codification of federal law — not through any substantive congressional decision to alter the statute's scope, but solely for the purpose of concision and drafting economy, without congressional authority to effect a substantive change. The codifiers explicitly disclaimed any intent to alter statutory meaning. *Rogers v. Jarrett*, 63 F.4th at 975–76 (Willett, J., concurring).

61.    The Supreme Court's recognition of qualified immunity in *Pierson v. Ray*, 386 U.S. 547 (1967), rested on the premise that Congress had not explicitly abrogated common-law official immunity when it enacted § 1983. That premise is historically false. The original 1871 Act's notwithstanding clause was an explicit abrogation of exactly such immunity. The foundation of the qualified immunity doctrine is therefore undermined by the historical record. *Rogers v. Jarrett*, 63 F.4th at 977–78 (Willett, J., concurring); Reinert, 111 Cal. L. Rev. at 228–32.

62.    Plaintiff acknowledges that the Fifth Circuit remains bound by Supreme Court precedent recognizing qualified immunity. Plaintiff preserves this argument for purposes of en banc review and certiorari, and alternatively argues

that even under existing qualified immunity doctrine, no Defendant is entitled to immunity because the constitutional rights at issue were clearly established at the time of the violations alleged herein, and no reasonable officer could have believed that the actions taken — prosecuting a journalist for reporting on public water safety, arresting a citizen for holding a protest sign, or threatening communities with felony prosecution for discussing government services — were constitutionally permissible.

## VI. CAUSES OF ACTION

### COUNT I
### FIRST AMENDMENT RETALIATION — RETALIATORY PROSECUTION
42 U.S.C. § 1983
(Against Defendants Gregory and Beckham, Individually)

63.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

64.    At all relevant times, Defendants Gregory and Beckham were acting under color of state law within the meaning of 42 U.S.C. § 1983.

65.    Mrs. Combs engaged in constitutionally protected speech when she published a Facebook post reporting community concerns about the safety of the City of Trinidad's municipal water supply. Speech about the safety of a community's drinking water is a quintessential matter of public concern entitled to

the highest degree of First Amendment protection. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011); *Connick v. Myers*, 461 U.S. 138, 145 (1983).

66.     Defendants Gregory and Beckham initiated and pursued a criminal prosecution of Mrs. Combs under Texas Penal Code § 42.06 as a direct result of, and in retaliation for, her protected speech. Her protected speech was a substantial — indeed, the sole — motivating factor in the decision to prosecute. *Gonzalez v. Trevino*, 602 U.S. 653 (2024); *Nieves v. Bartlett*, 587 U.S. 391 (2019).

67.     No legitimate law enforcement purpose justified the prosecution. The statute invoked does not reach Mrs. Combs' conduct. Any officer acting in good faith and aware of even the most basic First Amendment principles would have recognized the prosecution as constitutionally impermissible. The existence of probable cause — which Plaintiff disputes in any event — does not insulate a retaliatory prosecution from constitutional scrutiny. *Lozman v. City of Riviera Beach*, 585 U.S. 87, 97 (2018).

68.     The retaliatory prosecution proximately caused Mrs. Combs substantial injury, including reputational harm, emotional distress, the costs and burdens of criminal defense, and a direct and ongoing chilling of her First Amendment–protected journalistic activities.

69.     A person of ordinary firmness would be deterred from engaging in constitutionally protected activity by the initiation of a criminal felony prosecution for publishing a community safety post on social media.

70.     Defendants Gregory and Beckham acted with deliberate indifference to, or in conscious disregard of, Plaintiff's clearly established constitutional rights, entitling Plaintiff to compensatory and punitive damages against them in their individual capacities.

## COUNT II
## FIRST AMENDMENT — VIEWPOINT DISCRIMINATION, CHILLING EFFECT,
## AND PRIOR RESTRAINT
42 U.S.C. § 1983
(Against All Individual Defendants)

71.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72.     At all relevant times, all individual Defendants were acting under color of state law within the meaning of 42 U.S.C. § 1983.

73.     The official governmental post published on the Trinidad Police Department's official Facebook page — administered by Defendant Gregory in his official capacity as senior policymaker — declaring that communicating public information about the City's water quality "is a state jail felony" constitutes a direct official governmental threat against constitutionally protected speech. It is a viewpoint-based governmental pronouncement expressly designed to suppress a

specific category of protected expression: public discussion of water safety issues critical of the City and its officials. Such viewpoint discrimination is the most egregious and presumptively unconstitutional form of government speech regulation. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828–29 (1995).

74.    The criminal prosecution of Mrs. Combs, combined with the official governmental declaration that her type of speech constitutes a state jail felony, constitutes a prior restraint on speech of the most disfavored constitutional character. *Near v. Minnesota*, 283 U.S. 697, 713 (1931); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). The Supreme Court has long recognized that informal governmental coercion designed to suppress speech operates as a prior restraint subject to the strictest constitutional scrutiny.

75.    These actions have had, and continue to have, a direct, substantial, and ongoing chilling effect on the First Amendment–protected activities of Mrs. Combs and on the rights of other citizens, journalists, and community members who might otherwise report on or discuss matters of public concern relating to the City of Trinidad's conduct and services.

76.    All individual Defendants participated in and advanced the viewpoint-based suppression of Plaintiff's speech: Gregory initiated and directed the prosecution, controlled the official social media threatening citizens, and selected a

biased magistrate; Beckham conducted the investigation that produced the charges; and Bannister instigated and supported the retaliatory prosecution in her official and individual capacities.

77.    Plaintiff is entitled to declaratory and injunctive relief, as well as compensatory and punitive damages, for the constitutional violations alleged in this Count.

## COUNT III
## CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
42 U.S.C. §§ 1983 AND 1985(3)
(Against Defendants Gregory, Beckham, and Bannister)

78.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79.    Defendants Gregory, Beckham, and Bannister entered into an agreement, understanding, and conspiracy — express or implied — to deprive Mrs. Combs of rights secured by the First and Fourteenth Amendments to the United States Constitution, including her right to freedom of speech, freedom of the press, and freedom from retaliatory governmental action based on the content and viewpoint of her protected expression.

80.    The object of the conspiracy was threefold: (1) to silence Mrs. Combs' reporting on matters of public concern, including the City's water quality crisis; (2) to punish her for journalism critical of Defendants Gregory and

Bannister; and (3) to manufacture a pretextual criminal prosecution to accomplish those unconstitutional ends and deter future reporting.

81.    In furtherance of the conspiracy, each Defendant committed overt acts, including without limitation:

a.    **Gregory** directed Beckham to investigate and pursue criminal charges against Mrs. Combs, deliberately circumvented the City's municipal judge to seek a warrant from a politically compromised Justice of the Peace, and published official governmental threats on the TPD's Facebook page characterizing Plaintiff's constitutionally protected journalism as a state jail felony.

b.    **Beckham** conducted the investigation leading to the charges against Mrs. Combs at Gregory's direction, did so while admittedly ignorant of First Amendment law and without regard for its constitutional requirements, and submitted materials in support of the warrant application.

c.    **Bannister** instigated and encouraged the prosecution, providing political authorization for the retaliatory scheme, leveraging her official position on the City Council to advance the conspiracy, and suppressing corrective institutional responses — including working to constructively terminate the municipal judge who refused to participate in Gregory's unconstitutional actions.

82.    Defendant Bannister's participation in the conspiracy was motivated, in part, by a desire to suppress reporting about the water quality crisis — a crisis that directly implicates her husband's on-the-record admissions about asbestos in the water supply and the City Council's failure to address a known public health emergency.

83.    The conspiracy described herein constitutes a violation of 42 U.S.C. § 1983 for acting jointly under color of state law to deprive Plaintiff of constitutional rights. It additionally constitutes a conspiracy within the meaning of 42 U.S.C. § 1985(3), in that Defendants conspired to deprive Plaintiff of the equal protection of the laws and of equal privileges and immunities, motivated by class-based animus against her as a journalist, critic of governmental authority, and member of a class of persons who publicly challenge official misconduct.

84.    As a direct and proximate result of the conspiracy, Mrs. Combs has suffered and continues to suffer injuries as described herein. Each co-conspirator is jointly and severally liable for all damages proximately caused by the conspiracy.

**COUNT IV**
**FOURTH AMENDMENT — FALSE ARREST AND UNLAWFUL SEIZURE**
42 U.S.C. § 1983
(Against Defendants Gregory and Beckham, Individually)

85.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

86.     The Fourth Amendment to the United States Constitution, incorporated against the states through the Fourteenth Amendment, guarantees the right of persons to be free from unreasonable seizures, including arrest without probable cause. A warrantless arrest or an arrest pursuant to a warrant lacking probable cause violates this guarantee and gives rise to a claim under 42 U.S.C. § 1983. *Gerstein v. Pugh*, 420 U.S. 103, 111–112 (1975); *Manuel v. City of Joliet*, 580 U.S. 357 (2017).

87.     At all relevant times, Defendants Gregory and Beckham were acting under color of state law within the meaning of 42 U.S.C. § 1983.

88.     Mrs. Combs was arrested and seized by Defendants pursuant to a warrant obtained by Defendant Beckham under the direction and authorization of Defendant Gregory. That arrest was constitutionally unlawful because it lacked probable cause.

89.     Probable cause to arrest exists only when the totality of facts and circumstances known to the arresting officer at the time of arrest would lead a reasonable officer to conclude that the suspect had committed, was committing, or was about to commit a crime. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). No such facts and circumstances existed here.

90.     Texas Penal Code § 42.06 requires, at a minimum, that the defendant knowingly initiate a report or alert that she knows to be false and that relates to an incident requiring an emergency response. Mrs. Combs did none of these things. She reported credible community information about a genuine public health concern. She initiated no emergency response. She contacted no emergency services. She did not claim a fire, explosion, crime, or any other incident necessitating emergency dispatch. No reasonable officer applying the statute in good faith could have concluded that probable cause existed to arrest Mrs. Combs under § 42.06.

91.     The absence of probable cause is further demonstrated by Defendant Beckham's own admission, made on May 13, 2026, that he does not consider or apply current case law governing the statutes he enforces and has not received First Amendment training in several years. An investigator who admittedly ignores governing law when evaluating whether conduct is criminal cannot, by definition, have conducted the legally adequate probable cause analysis that the Fourth Amendment requires.

92.     The warrant obtained to effectuate Mrs. Combs' arrest is independently constitutionally deficient. Defendant Gregory deliberately bypassed the City's municipal judge — the neutral and detached magistrate most familiar with Gregory's pattern of unconstitutional conduct and least likely to issue a

legally unsupportable warrant — in favor of a Justice of the Peace who harbored documented personal and political conflicts with Mrs. Combs. A magistrate who is not neutral and detached cannot satisfy the Fourth Amendment's warrant requirement. The deliberate selection of a compromised magistrate to obtain a warrant that would not have survived neutral judicial scrutiny renders the warrant constitutionally void. *Franks v. Delaware*, 438 U.S. 154, 164–165 (1978).

93.     An officer who seeks and obtains a warrant on the basis of a legally and constitutionally deficient application — one that no reasonably well-trained officer would have submitted — is not shielded from § 1983 liability simply because a magistrate signed the warrant. *Malley v. Briggs*, 475 U.S. 335, 344–345 (1986). The liability of Defendants Gregory and Beckham for the unlawful arrest is not extinguished by the fact that a warrant — obtained from a constitutionally compromised magistrate on an application that lacked probable cause — was issued.

94.     The issuance of the City's boil water notice following Mrs. Combs' post, combined with the admissions of multiple citizens that they had been hospitalized from drinking the City's water, conclusively negates any good-faith basis for a determination of probable cause. The information Mrs. Combs reported was not only credible — it was corroborated by the City's own governmental actions within days of her post.

95.　As a direct and proximate result of the constitutionally unlawful arrest, Mrs. Combs suffered injuries including loss of liberty, reputational harm, emotional distress and humiliation, the costs of criminal defense, and the ongoing chilling of her constitutionally protected activities.

96.　Defendants Gregory and Beckham acted with deliberate indifference to, or in conscious disregard of, Plaintiff's clearly established Fourth Amendment rights, entitling Plaintiff to compensatory and punitive damages against them in their individual capacities. The right to be free from arrest without probable cause was clearly established well beyond any reasonable dispute at the time of Mrs. Combs' arrest.

**COUNT V**
**MUNICIPAL LIABILITY**
42 U.S.C. § 1983 — MONELL
(Against Defendant City of Trinidad, Texas)

97.　Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

98.　Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when the execution of a governmental policy or custom causes the deprivation of a constitutional right. The City of Trinidad is liable for the constitutional violations described herein under each of the following independent theories:

**a. Direct Policy Through the Actions of a Final Policymaker**

99.    Defendant Gregory, as the Chief of Police and senior policymaker for the Trinidad Police Department, established official policy for that department. His decisions — including the decision to investigate and prosecute Mrs. Combs, the decision to publish official governmental threats against protected speech on the Department's Facebook page, and the decision to arrest a citizen for holding a protest sign — constitute the official policy of the City of Trinidad. The constitutional torts of a final policymaker are directly attributable to the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986).

**b. Failure to Train**

100.   The City of Trinidad, acting through its policymaker Defendant Gregory, failed to provide its officers — including Defendant Beckham — with constitutionally adequate training on the First and Fourth Amendments and their application to the investigation and enforcement of criminal statutes implicating protected speech and the probable cause requirement for arrest. This failure was not inadvertent. It was the product of deliberate indifference to the known and obvious risk that untrained officers would violate the First and Fourth Amendment rights of citizens engaged in public discourse. *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

101.   Defendant Beckham's own admission — that he does not consider current case law regarding the statutes he enforces and has not received First

Amendment training in several years — is direct evidence of this failure to train and its causal relationship to the constitutional violation of Mrs. Combs' First Amendment rights and the Fourth Amendment right to be free from arrest without probable cause. The connection between the training failure and the resulting violations is not speculative; it is admitted by the officer who conducted the investigation and supported the warrant application.

### c. Widespread Custom and Practice of Retaliatory Suppression

102.   The City of Trinidad has a documented, persistent, and widespread custom and practice of retaliating against citizens, public employees, and officials who expose governmental misconduct, financial irregularities, and failures in the delivery of public services. This custom is reflected in: the prosecution of Mrs. Combs for journalistic reporting; the arrest of a citizen for holding a protest sign critical of law enforcement; the removal of a city administrator for exposing financial irregularities; and the ongoing effort to constructively terminate the municipal judge for exercising judicial independence. Taken together, these incidents establish a custom sufficiently widespread and longstanding to constitute official policy for Monell purposes.

### d. Ratification

103.   By permitting, failing to investigate, and failing to remedy the pattern of constitutional violations described herein, including those directly attributable to

its senior policymaker Defendant Gregory, the City of Trinidad has ratified those violations and rendered them the official policy of the municipality. *Pembaur*, 475 U.S. at 483.

## COUNT VI
## DECLARATORY RELIEF
28 U.S.C. §§ 2201–2202
(Against All Defendants)

104. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

105. An actual and justiciable controversy exists between Plaintiff and Defendants concerning the constitutionality of Defendants' actions, the applicability of Texas Penal Code § 42.06 to Mrs. Combs' conduct, and the right of citizens and journalists to report on matters of public concern relating to municipal services without governmental retaliation.

106. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a declaratory judgment declaring:

a. That Mrs. Combs' Facebook post concerning the safety of the City of Trinidad's water supply constitutes speech protected by the First Amendment to the United States Constitution;

b. That Texas Penal Code § 42.06 does not apply to Mrs. Combs' conduct as a matter of law, and that the criminal charge brought against her is legally void;

c.    That the criminal prosecution of Mrs. Combs was constitutionally infirm as a retaliatory prosecution motivated by the content and viewpoint of her protected speech;

d.    That the official governmental statement published on the TPD's Facebook page characterizing the reporting of water quality concerns as a state jail felony is unconstitutional as a matter of law as viewpoint-based governmental suppression of protected expression;

e.    That the arrest of Mrs. Combs was made without probable cause in violation of the Fourth Amendment to the United States Constitution and is constitutionally void;

f.    That Defendants Gregory, Beckham, and Bannister violated Mrs. Combs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution; and

g.    That the City of Trinidad's policies, customs, and practices of retaliating against critics, whistleblowers, and those who expose governmental misconduct are unconstitutional.

## COUNT VII
## INJUNCTIVE RELIEF
(Against All Defendants)

107.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

108.    Absent injunctive relief, Mrs. Combs and other citizens of the Navarro County community face a continuing and substantial risk of retaliatory criminal prosecution for the exercise of their First Amendment rights. The ongoing threat of prosecution has a direct, concrete, and chilling effect on Plaintiff's exercise of her constitutional freedoms that cannot be fully remedied by an award of money damages alone.

109.    The balance of equities strongly favors the issuance of injunctive relief. The harm to Mrs. Combs from the continued suppression of her First Amendment rights vastly outweighs any legitimate governmental interest that Defendants could assert in pursuing a prosecution that has no basis in law and no foundation in fact.

110.    The public interest strongly favors injunctive relief. Citizens of Navarro County and the surrounding area have a compelling interest in the free flow of information about the safety of their drinking water and in the protection of the journalists and community members who report on that subject.

111.    Plaintiff seeks preliminary and permanent injunctive relief as follows:

a.    Ordering the dismissal of the criminal charge pending against Mrs. Combs under Texas Penal Code § 42.06;

b.      Permanently enjoining Defendants Gregory, Beckham, and Bannister, individually and in their official capacities, from initiating, pursuing, directing, or facilitating any criminal investigation or prosecution of Mrs. Combs based on her constitutionally protected speech;

c.      Permanently enjoining the City of Trinidad and Defendant Gregory from publishing official governmental statements characterizing the reporting or discussion of matters of public concern — including water quality concerns — as criminal conduct;

d.      Requiring the City of Trinidad to implement constitutionally adequate First Amendment training for all members of the Trinidad Police Department within ninety (90) days of the Court's order; and

e.      Such other and further injunctive relief as the Court deems just and proper.

## VII. DAMAGES

112.  As a direct and proximate result of Defendants' unconstitutional conduct, Mrs. Combs has suffered and continues to suffer the following damages:

a.      Reputational harm arising from the false and pretextual criminal prosecution and the TPD's official public characterization of her journalism as criminal conduct;

b.      Severe emotional distress, including anxiety, humiliation, fear, and suffering arising from the prosecution and official governmental threats directed at her;

c.      The costs and financial burdens of defending against a baseless criminal prosecution;

d.      The direct, ongoing, and measurable chilling of her First Amendment–protected journalistic activities;

e.      Lost earnings, income, and professional opportunities arising from Defendants' conduct; and

f.      Such other actual and consequential damages as shall be proven at trial.

113.   Plaintiff further seeks punitive damages against Defendants Gregory, Beckham, and Bannister in their individual capacities. The conduct of each individual Defendant was deliberately indifferent to Plaintiff's constitutional rights, motivated by political animus and personal hostility, and carried out with knowledge of its constitutional infirmity. Such conduct warrants the imposition of

substantial punitive damages to punish the individual Defendants and to deter future constitutional violations of the same character.

114.   Plaintiff additionally seeks attorney's fees, litigation costs, and expenses pursuant to 42 U.S.C. § 1988, which provides for the award of reasonable attorney's fees to a prevailing party in a civil rights action brought under 42 U.S.C. § 1983.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jennifer Lynn Combs respectfully prays that this Court enter judgment in her favor and against Defendants, and grant the following relief:

1.    Enter judgment in Plaintiff's favor against all Defendants on each Count alleged herein;

2.    Award Plaintiff compensatory damages in an amount to be determined by the jury, including damages for reputational harm, emotional distress, loss of liberty, lost earnings, and all other actual damages proximately caused by Defendants' unconstitutional conduct under the First and Fourth Amendments;

3.    Award Plaintiff punitive damages against Defendants Gregory, Beckham, and Bannister, individually, in an amount sufficient to punish their

deliberate, malicious, and constitutionally infirm conduct and to deter similar conduct in the future;

4.      Enter a declaratory judgment as described in Count VI, declaring Defendants' conduct unconstitutional, Mrs. Combs' arrest without probable cause, and the criminal charge against her legally and constitutionally void;

5.      Issue a preliminary and permanent injunction as described in Count VII;

6.      Award Plaintiff her reasonable attorney's fees, litigation costs, and expenses pursuant to 42 U.S.C. § 1988;

7.      Award Plaintiff pre- and post-judgment interest at the maximum rate permitted by applicable law; and

8.      Award Plaintiff such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Jennifer Lynn Combs hereby demands a trial by jury on all issues so triable pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).


**Respectfully submitted,**

**GFA LAW, PLLC**

/s/ CJ Grisham

**CJ Grisham**
State Bar No. 24124533
GFA Law, PLLC
3809 S. General Bruce Dr., Suite 103-101
Temple, Texas 76502
Telephone: 254-405-1726
Email: cj@gfalaw.us

*Attorney for Plaintiff Jennifer Lynn Combs*