**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **JENNIFER LYNN COMBS**<br><br>***Plaintiffs*****,**<br><br>**v.**<br><br>**CHARLES W. GREGORY, individually and in his official capacity as Chief of Police of the City of Trinidad, Texas; CAMERON BECKHAM, individually and in his official capacity as and Officer, Trinidad Police Department; MARIE BANNISTER, individually and in her oficial capacity as City Councilwoman, City of Trinidad, Texas; and THE CITY OF TRINIDAD, TEXAS**<br><br>***Defendants*****.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 6:26-cv-235** |

**DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the Defendants in the above-numbered and -referenced action and file this their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and would respectfully show unto the Court as follows:

## I.
## INTRODUCTION[1]

[1]Because Defendants file this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts (but not conclusory statements). Defendants accept as true only the well-pleaded facts in Plaintiff's Original Complaint and only for the purposes of this Motion, and do not admit them for any other purpose. In light of the standard applicable to motions to dismiss, Defendants repeat some facts as Plaintiff has pleaded them. That repetition is not an admission but an acknowledgment of the Rule 12(b)(6) standard.

Plaintiff brings this lawsuit against Defendants for purported violations of 42 U.S.C. § 1983 and § 1985(3). (Pl.'s Compl. [#1], ¶ 1.) She alleges "systematic violations of [her] rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution. (*Id.*)

Plaintiff alleges that the Defendants "weaponize[ed]" state criminal law to silence her journalistic reporting on public safety concerns regarding the City of Trinidad's municipal water supply. (Pl.'s Compl. [#1], ¶ 2.) In seven counts, she alleges: (1) First Amendment retaliation (against Defendants Gregory and Beckham, individually); (2) First Amendment viewpoint discrimination (against all individual Defendants); (3) conspiracy to violate constitutional rights (against all individual Defendants); (4) false arrest and unlawful seizure (against Defendants Gregory and Beckham, individually); and (5) municipal (*Monell*) liability against the City, on four theories.[2] (*See* Pl.'s Compl. [#1], pp. 23-37.) She also requests declaratory and injunctive relief. (*See id.*)

Plaintiff seeks damages from all Defendants for reputational harm, emotional distress, and lost earnings, income, and professional opportunities. (Pl.'s Compl. [#1], ¶ 112.) She also seeks punitive damages from the individual Defendants in their individual capacities and attorney's fees, litigation costs, and expenses. (Pl.'s Compl. [#1], ¶¶ 113-14.) Plaintiff sues the individual Defendants in both their official and individual capacities. (Pl.'s Compl. [#1], p. 1.)

Plaintiff alleges that she was arrested for creating a Facebook post concerning "credible reports from members of the community regarding the safety of the City of Trinidad's drinking water." (Pl.'s Compl. [#1], ¶ 20.) Plaintiff claims she was "[a]cting in her capacity as a journalist

[2] Plaintiff asserts that the City had a direct policy of violating constitutional rights through the actions of a policymaker (namely, Defendant Gregory), the City failed to train its police officers – resulting in constitutional violations, that the City had a widespread custom and practice of "retaliatory suppression," and that the City effectively ratified the alleged constitutional violations and transformed those violations into official City policy. (*See*, Pl.'s Compl. [#1], pp. 33-35.)

and in service of the public's fundamental right to know about matters of vital community concern." (*Id.*, ¶ 21.)

Without providing evidence of his having done so, Plaintiff alleges that Chief Gregory directed Officer Beckham to investigate and pursue criminal charges under §42.06 of the Texas Penal Code against her. (Pl.'s Compl. [#1], ¶¶ 28-29.) Section 42.06 (False Alarm or Report) provides:

> (a) A person commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily:
> (1) cause action by an official or volunteer agency organized to deal with emergencies;
> (2) place a person in fear of imminent serious bodily injury; or
> (3) prevent or interrupt the occupation of a building, room, place of assembly, place to which the public has access, or aircraft, automobile, or other mode of conveyance.
> (b) An offense under this section is a Class A misdemeanor unless the false report is of an emergency involving a public or private institution of higher education or involving a public primary or secondary school, public communications, public transportation, public water, gas, or power supply or other public service, in which event the offense is a state jail felony.

TEX. PENAL CODE § 42.06.

Citing no examples, Plaintiff asserts that her arrest "was an act of deliberate political retaliation driven by [her] history of critical journalism directed at Defendants Gregory and [City Councilwoman Marie] Bannister…" (Pl.'s Compl. [#1], ¶ 30.) Plaintiff accuses Defendant Bannister of conspiring to have her arrested "because of" knowledge of the problems with the City of Trinidad's municipal water supply which she had allegedly obtained from her son, Jerry Bannister, a member of the Trinidad Economic Development Board and the Planning and Zoning Commission. (Pl.'s Compl. [#1], ¶¶ 46-47.) It is important to note that Mr. Bannister is not named as a Defendant in this litigation. (*See generally*, Pl.'s Compl. [#1].)

In this case, all individual defendants are entitled to qualified immunity because, even if Plaintiff's constitutional rights were violated, none of the Defendants violated clearly established law because arguable probable cause existed to believe that Plaintiff had violated §42.06 of the Texas Penal Code. Plaintiff has not cited any actions of Defendant Bannister to suggest that she had any active part in the violation of Plaintiff's constitutional rights, assuming, only for the sake of argument, that her rights were violated.

Plaintiff's conspiracy claim must fail under the intracorporate conspiracy doctrineWithout conceding that any conspiracy ever took place, it is nevertheless axiomatic that a governmental entity cannot conspire with itself. Additionally, the conspiracy claim fails because Plaintiff fails to allege facts showing an agreement between any alleged conspirators or an act in furtherance of the conspiracy and because she cannot show any class-based animus motivating the alleged conspiracy.

As to the municipal liability claim against the City of Trinidad, the Plaintiff cannot show a pattern of similar constitutional violations as necessary to establish a *Monell* claim. Plaintiff attempts to use three disparate episodes to suggest that there is a widespread pattern of constitutional violation attributable to the City: the removal of a city administrator, an alleged effort to remove a municipal judge, and the arrest of a man holding a protest sign unrelated to the municipal water issue. (*See*, Pl.'s Compl. [#1], ¶ 52.) However, these events are neither numerous enough, nor sufficiently similar to the retaliatory-prosecution injury Plaintiff claims to impart liability to the City of Trinidad. Further, Plaintiff's allegation that the City ratified any unconstitutional action fails because she does not plead – and cannot prove – that an authorized policymaker approved any improper action. Therefore, all claims against the Defendants should be dismissed with prejudice.

## II.
## STATEMENT OF THE ISSUES

1. Whether the individual defendants are entitled to qualified immunity.
2. Whether the Plaintiff can maintain her civil conspiracy claim.
3. Whether Plaintiff can maintain her municipal liability claim against the City of Trinidad.

## III.
## STANDARD

When considering a motion to dismiss pursuant to 12(b)(6), the court must decide whether the facts alleged in the complaint, if true, would plausibly entitle the plaintiff to some legal remedy. *Ashcroft v. Iqbal*, 566 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). When ruling on a 12(b)(6) motion to dismiss, the court generally may rely on the plaintiff's complaint and any proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, reviewing them in the light most favorable to the plaintiff. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010) (citing *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995)). However, the court need not accept as true any legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-79, 129 S. Ct. 1937. "A complaint fails if it 'tenders naked assertion[s] devoid of further factual enhancement.'" *Shine v. Jones*, 743 Fed. Appx. 566, 567 (5th Cir. 2018) (quoting *Iqbal* 556 U.S., at 678).

The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 663, 129 S. Ct. 1937.

# IV.
# ARGUMENT

## *a. All individual defendants are entitled to qualified immunity because their actions were not objectively unreasonable in light of clearly established law.*

Section 1983 essentially allows a plaintiff to redress alleged constitutional violations by "seek[ing] money damages from the personal pocket of a" governmental official. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "The qualified immunity doctrine makes that task difficult in every case." *Id*.

"[T]he rule is that a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation—full stop." *Carswell v. Camp,* 37 F.4th 1062, 1067 (5th Cir. 2022) (quotation omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery*." *Id*. at 1067 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis in original). Further, a good-faith assertion of qualified immunity alters the usual burden of proof, shifting the burden to the plaintiff to show that the defense is not available. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017).

"A public official is entitled to qualified immunity unless the plaintiff can demonstrate that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (quoting *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012)). Courts may exercise their "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"The second question – whether the officer violated clearly established law – is a doozy. The § 1983 plaintiff bears the burden of proof. And the burden is heavy." *Morrow*, 917 F.3d at 874 (citing *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018)) (internal citations omitted). "A right is clearly established only if relevant precedent 'has placed the constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks, brackets, and punctuation omitted). "The official's subjective motivation is irrelevant to the qualified-immunity defense, except as far as it is relevant to the underlying constitutional claim." *Id.*

"Unless existing precedent squarely governs the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)) (internal quotation marks omitted). "Generally, to satisfy this standard, the plaintiff must identify a case in which an officer acting under similar circumstances was held to have violated the Constitution and explain why the case clearly proscribed the conduct of that individual officer." *Id*. at 205 (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)) (internal brackets and punctuation omitted).

The Fifth Circuit has observed that "[t]he pages of the *United States Reports* teem with warnings about the difficulty of placing a question beyond debate." *Morrow*, 917 F.3d at 874. The Court has extracted from these precedents "four applicable commandments" relating to whether a right is clearly established. *Id*.

First, the court must "frame the constitutional question with specificity and granularity." *Id*. at 874-75. Rather than defining clearly established law with a "high level of generality . . . ., the dispositive question is whether the violative nature of the *particular* conduct is clearly established." *Id*. at 875 (quoting *al-Kidd*, 563 U.S. at 742; *Mullenix v. Luna*, 577 U.S. 7 (2015)

(per curiam)) (emphasis in original) (internal brackets omitted). "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015).

"Second, clearly established law comes from holdings, not dicta." *Morrow*, 917 F.3d at 875. The reason for this is a practical one: "officers are not charged with memorizing every jot and tittle" a court uses to explain a holding. *Id*. at 876.

"Third, overcoming qualified immunity is especially difficult in excessive force cases." *Id*. (quoting *Kisela v. Hughes*, 548 U.S. 100, 138 S. Ct. 1148, 1153 (2018) (per curiam); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009)) (emphasis in original). This is an area of the law 'in which the result depends very much on the facts of each case,' and thus officials are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id*.

"The fourth and final commandment is . . . [that courts] must think twice before denying qualified immunity." *Id*. Due to the "importance of qualified immunity to society as a whole," courts are "ill advised to . . . deny qualified immunity to anyone but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In short, plaintiffs seeking to prove that a governmental official is not entitled to qualified immunity are "seeking an extraordinary remedy. To get it, they must make an extraordinary showing." *Id*. They must "identif[y] a controlling precedent that squarely governs the specific facts at issue." *Id*. (quoting *Kisela*, 138 S. Ct. at 1153). The Supreme Court has called it a "demanding standard." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

Because the individual Defendants have raised the issue of qualified immunity, the burden shifts to the Plaintiff to identify on-point precedent establishing that arrests for violations of the specific statute at issue under the same circumstances violate the Constitution. *See Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2007). In sum, Plaintiff cannot carry her burden of directing the Court to case law which would have shown that the right she claims was clearly established. Further, Plaintiff cannot direct the Court to any precedent showing that arresting Plaintiff under §42.06 would have violated her constitutional rights under circumstances where, as here, she posted about the City's municipal water supply in such a way that alarm was reasonably certain to result.

***i. Officer Beckham and Chief Gregory are entitled to qualified immunity because arguable probable cause existed to arrest Plaintiff.***

When a First Amendment free speech claim arises from an arrest and is inextricable from a Fourth Amendment claim, liability for both depends on whether the officers violated clearly established law under the Fourth Amendment. *Villarreal v. City of Laredo, Texas*, 94 F.4th 374, 384-85 (5th Cir. 2024); *see Sause v. Bauer*, 585 U.S. 957, 959 (2018) (finding that when investigating a free speech matter later implicates Fourth Amendment rights, the First and Fourth Amendment issues may be inextricable). As discussed below, the independent intermediary doctrine bars Plaintiff's claims. Because the independent intermediary doctrine undermines Plaintiff's probable cause challenge, and because the law was not clearly established under Texas Penal Code § 46.04, Chief Gregory and Officer Beckham are entitled to qualified immunity on Plaintiff's false arrest and unlawful seizure, First Amendment retaliation, and malicious prosecution claims.

Arguable probable cause existed to arrest Plaintiff. As an initial matter, an officer's state of mind is irrelevant to the existence of probable cause. *Whren v. U.S.*, 517 U.S. 806, 813-14

(1996) (foreclosing the argument that a Fourth Amendment challenge depends on the officer's motivation). Probable cause is determined objectively on the totality of the circumstances known to the officer at the time. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). Probable cause is not a high bar. *Id*. A showing of probable cause requires only the probability or a substantial chance that criminal activity occurred. *Id*. Officers need not have identified the "right" offense; probable cause on any offense the facts support defeats a Fourth Amendment claim. *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (finding that an arresting officer's state of mind is irrelevant to the existence of probable cause).

The Fourth Amendment requires that an arrest be supported by probable cause. *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). Under a retaliatory arrest claim, such as the kind made in Count I here, a plaintiff must plead and prove the absence of probable cause. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). However, the independent intermediary doctrine applies when an issue turns on probable cause under the Fourth Amendment. *Buehler v. City of Austin*, 824 F.3d 548, 553–54 (5th Cir. 2016).

Even at the motion to dismiss stage, the independent intermediary doctrine is a difficult to overcome for a plaintiff: when facts supporting an arrest are placed before an independent intermediary, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017); *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009). Even an officer who acted with malice is not liable if the facts supporting the warrant are put before an impartial intermediary. *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). The intermediary's deliberations insulate even an officer's malicious intent. *Craig v. Dall. Area Rapid Transit Auth.*, 504 F. App'x 328, 333 (5th Cir. 2012). The doctrine applies "even if the independent intermediary's action occurred after the arrest and even if the

arrestee was never convicted of any crime. *Buehler,* 824 F.3d at 554; *see also Taylor v. Gregg*, 36 F.3d 453, 455, 456–57 (5th Cir. 1994); *Russell v. Altom*, 546 F. App'x 432, 434, 436–37 (5th Cir. 2013).

Here, a magistrate issued an arrest warrant for the arrest of Plaintiff for violation of Texas Penal Code § 42.06. (*See Pl.*'s Compl. [#1] ¶ 88.) Under that statute, a person commits an offense if that person "communicates or circulates a report" of an emergency that the person knows is false or baseless and would ordinarily cause action by an official agency organized to deal with emergencies or place a person in fear of imminent serious bodily injury. TEX. PENAL CODE § 42.06. Plaintiff made a Facebook post about alleged issues with the City of Trinidad's municipal water supply. (Pl.'s Compl. [#1], ¶¶ 20-24.) Plaintiff asserts that her arrest lacked probable cause. (Pl.'s Compl. [#1], ¶88.) This assertion invokes the independent intermediary doctrine. *Buehler*, 824 F.3d at 553–54

An officer may be liable under the independent intermediary doctrine if a malicious motive led him to withhold relevant information from the independent intermediary. *Cuadra v. Hous. Indep. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir. 2010). To overcome the intermediate intermediary doctrine, a Plaintiff must affirmatively show that the defendants tainted the intermediary's decision. *Craig,* 504 F. App'x at 332; *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004). Plaintiff has not alleged facts to show that the neutral magistrate's decision was tainted.

One avenue for Plaintiff to prove taint is to show that the officers knowingly withheld relevant, material information from the neutral magistrate. *Trevino v. Iden*, 79 F.4th 524, 535 (5th Cir. 2023). In *Trevino*, the Court dismissed the plaintiff's § 1983 suit because the plaintiff did not allege the officers knowingly withheld evidence; his allegations spoke to the weight of the evidence and not whether the intermediary's decision was tainted. *Id.* at 535.

So too here. Plaintiff merely alleges that "the warrant obtained to effectuate [Plaintiff's] arrest is…constitutionally deficient." (Pl.'s Compl. [#1]. ¶ 92.) Just as the plaintiff in *Trevino* did not allege that the defendants knowingly withheld evidence, Plaintiff here does not allege that Chief Gregory or Officer Beckham knowingly withheld any information from the magistrate Probable cause is determined by the totality of facts and circumstances. *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013). And *Trevino* confirmed that not every element of a crime is required for probable cause. *Trevino*, 79 F.4th at 533-35 (holding that the independent intermediary doctrine was not overcome even though an element of the offense was not alleged in indictment).

Officer Beckham found probable cause that a crime had occurred during his investigation. Furthermore, a district judge issued a search warrant and a justice of the peace issued a valid arrest warrant based on Defendant Beckham's probable cause affidavit. Probable cause does not require the officers to have proven beyond a reasonable doubt or that the elements of an offense are met; it requires only a fair probability. *Wesby*, 583 U.S. at 57. That standard is measured against what the officer actually knew at the moment he acted, not against facts developed later or theories Plaintiff assembles in his Complaint. *Id*. (finding that probable cause is based on the totality of the circumstances).

Arguable probable cause requires only that a reasonable officer, on the facts available to him, could have believed an offense had occurred. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). And in assessing the available facts, officers may draw reasonable, common-sense inferences about human behavior, including inferences drawn from comments and calls received expressing alarm over the report of the poor water quality. *Wesby*, 583 U.S. at 58 (allowing officers to draw inferences based on the behavior of witnesses). This Circuit has granted qualified immunity even where the officer's probable cause judgment was imperfect, so long as it was

reasonable. *Mendenhall*, 213 F.3d at 230-31 (granting immunity where a reasonable officer could have believed the arrest lawful, even if mistaken).

For the Plaintiff to claim that the officers were substantially motivated by the content and viewpoint of Plaintiff's expression does not describe an event; it is to announce the verdict, using the exact words of the legal test for retaliation. *Iqbal*, 556 U.S. at 678 (holding that a formulaic recitation of the elements of a cause of action will not do). A plaintiff cannot manufacture a defendant's unlawful intent by asserting it in the language of the standard he must satisfy. *Iqbal*, 556 U.S. at 680–81. Here, because arguable probable cause existed – as supported by the duly-issued warrants – both Officer Beckham and Chief Gregory are entitled to qualified immunity.

***ii. Chief Gregory cannot be liable under a respondeat superior theory where he had no personal involvement in arresting or confining Plaintiff.***

To hold a supervisor individually liable under § 1983, the plaintiff must show that the supervisor affirmatively participated in the acts causing the constitutional deprivation or implemented unconstitutional policies causally resulting in injury. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) ("supervisory officials cannot be held vicariously liable for their subordinates' actions"). Additionally, Plaintiff must allege facts showing that Chief Gregory's adverse actions were "substantially motivated against [Plaintiff's] exercise of constitutionally protected conduct." *Keenan,* 290 F.3d at 258.

Plaintiff does not plead facts showing that Chief Gregory was directly involved in her arrest or confinement. Rather, she merely alleges that he "directed [Officer] Beckham to investigate and pursue criminal charges against Plaintiff." (Pl.'s Compl. [#1], ¶ 28.) She cannot, therefore, assert Chief Gregory is liable for her arrest or confinement in violation of the Fourth Amendment.

***iii. Ms. Bannister cannot be liable because she had no personal involvement in the events giving rise to this litigation.***

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). An individual defendant "cannot be liable under § 1983" without being involved in the acts that allegedly violated the plaintiff's rights. *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016). Because vicarious liability is inapplicable in a § 1983 suit, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676 (2009).

Here, Plaintiff's pleading is sparse and speculative (to say the least) concerning Ms. Bannister. She alleges that Ms. Bannister "is a known and persistent critic of Plaintiff." (Pl.'s Compl. [#1], ¶ 12.) As mentioned previously, Plaintiff attempts to equate Ms. Bannister's purported knowledge of issues with municipal water problems with participation in, and instigation of, the alleged "conspiracy to manufacture criminal charges against Plaintiff to silence her journalism." (*Id.*) Plaintiff alleges that Ms. Bannister "demonstrated a sustained and documented pattern of hostility toward [Plaintiff]…" (Pl.'s Compl., [#1], ¶ 16.)

While she alleges a "documented" pattern on the part of Ms. Bannister, Plaintiff actually documents nothing. Her Complaint is devoid of any identifiable action attributable to Ms. Bannister which could have infringed on Plaintiff's constitutional rights. As Plaintiff admits, Ms. Bannister was not involved in the criminal investigation or her arrest. (*See* Pl.'s Compl. [#1], ¶¶ 63-70; 85-95.) Further, Plaintiff does not allege that Ms. Bannister was involved making any official communication on behalf of the City of Trinidad about Plaintiff's arrest. (*See* Pl.'s Compl. [#1]. ¶¶ 71-77.) Since Ms. Bannister did not have any personal involvement with the issues about which Plaintiff complains, she cannot be liable. *Thompson*, 709 F.2d at 382

***b. Plaintiff's retaliatiatory arrest and prosecution claim fails because she cannot overcome the probable cause that supported her arrest, and the narrow* Nieves *exception does not apply*.**

A plaintiff bringing a First Amendment retaliatory arrest and prosecution claims must plead and prove the absence of probable cause; the existence of probable cause defeats the claim. *Nieves v. Bartlett*, 587 U.S. 391, 401 (2019) (finding that a retaliatory arrest claim requires the plaintiff to plead and prove the absence of probable cause); *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006) (a plaintiff must also plead and prove a lack probable cause to make a retaliatory prosecution claim) . This applies where – as here – the officers had at least arguable probable cause. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (requiring only that a reasonable officer could have believed probable cause existed for a retaliation claim).

The one narrow exception to *Nieves* does not apply in this case. That exception allows a retaliatory arrest claim to proceed despite probable cause where the plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who had engaged in the same protected speech were not. *Nieves,* 587 U.S. at 407. This exception is narrow and the evidence must be objective. *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024). In her Complaint, Plaintiff offers only an allegation of one other incident in which, she claims, the Trinidad Police Department arrested an individual for exercising their First Amendment rights.

Because probable cause existed and the *Nieves* exception does not apply, Plaintiff's First Amendment retaliatory arrest claim should be dismissed as to Defendants Gregory and Beckham, and each is entitled to qualified immunity. Both prongs of qualified immunity are satisfied here: the existence of probable cause defeats any First Amendment violation, and even assuming one, no clearly established law would have made the retaliatory nature of this arrest apparent to every reasonable officer.

***c. Plaintiff's claims of viewpoint discrimination fail because the Police Department's Facebook post about Plaintiff's arrest is not a regulation of private speech.***

Plaintiff alleges that, by making a Facebook post on the Trinidad Police Department's Facebook page about her arrest, the individual Defendants engaged in viewpoint discrimination. (Pl.'s Compl. [#1], ¶ 73.) It is true that the government is not allowed to regulate speech based on the subjective content of the speech or its message. *Police Dept. of Chicago v. Moseley*. 408 U.S. 92, 96 (1972). But the Supreme Court has expressly held that, when the government speaks "in its own voice," it is entitled to say what is wishes and is not bound by the viewpoint-neutrality rules that constrain its regulation of private speech. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009); *Walker v. Texas Div., Sons of Confederate Veterans, Inc.,* 576 U.S. 200, 207–08 (2015).

Here, the Department's Facebook post describing the charge against Plaintiff – even if inartfully worded – represents government speech on the status of law enforcement activity. It is not an example of the Department (nor, indeed, any of the individual Defendants) regulating the speech of Plaintiff or anyone else.

***d. There was no prior restraint in this case because there was no administrative or judicial action forbidding Plaintiff's speech in advance.***

Plaintiff complains that "[t]he criminal prosecution…combined with the official government declaration that her type of speech constitutes a state jail felony [i.e., the Department's Facebook post], constitutes a prior restraint on speech of the most disfavored constitutional character." (Pl.'s Compl. [#1], ¶ 74.) Without citing authority for the proposition, she alleges that "[t]he Supreme Court has long recognized that informal governmental coercion designed to suppress speech operates as a prior restraint subject to the strictest constitutional scrutiny." (*Id.*) On the contrary, the Supreme Court has held that a prior restraint is an administrative or judicial order forbidding speech in advance of its expression. *Alexander v. U.S.*, 509 U.S. 544, 550 (1993).

In this case, there can be no dispute that Plaintiff has not alleged any such previous administrative or judicial order. Thus, it cannot be said that the Department's Facebook post *after* her arrest – nor indeed, the arrest itself – was a prior restraint on Plaintiff's speech.

***e. Plaintiff cannot establish that any actions of the individual Defendants' actions had a "chilling effect" on future speech because a subjective "chill," standing alone, is not enough.***

Plaintiff alleges that her arrest and confinement had a "direct and ongoing chilling of her First Amendment-protected journalistic activities. (*See* Pl.'s Compl. [#1], ¶¶ 68; 75; 95.) In order to establish that governmental actions have a "chilling effect" on a plaintiff's speech rights, she must show *specific present objective harm* or a threat of *specific future harm*. *Laird v. Tatum*, 408 U.S. 1, 14 (1972). Allegations of a subjective 'chill' are not enough to make out a claim. *Id*.

Here, Plaintiff offers no more than the possibility that a chill of some kind could happen to her or others at some future time. This is not enough to make a claim of a "chilling effect" where, as has been previously discussed, Plaintiff's arrest was based on probable cause and subject to a valid warrant issued by an authorized judge (an intermediate intermediary).

***f. Plaintiff cannot maintain her civil conspiracy claim against any Defendant pursuant to the intracorporate conspiracy doctrine and because the claim is conclusory, without reference to any material facts.***

A single legal entity, such as a city, is incapable of conspiring with itself for the purposes of § 1985 liability. *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997), aff'd, 158 F.3d 583 (5th Cir. 1998); *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994); *Hudler v. McAfee*, No. 1:22cv769, 2023 WL 1936351, at *2 (W.D. Tex. Feb. 10, 2023) (dismissing conspiracy claims against county employees because they were legally incapable of conspiring). "It is a longstanding rule in the Fifth Circuit that a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."

*Thompson*, 979 F. Supp. at 511 (quoting *Hilliard*, 30 F.3d at 653). This "intracorporate conspiracy doctrine" has been applied many times in the Fifth Circuit to bar § 1985 conspiracy claims against employees of governmental entities. *See*, *e.g.*, *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F. Supp. 1022 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997); *Hilliard*, 30 F.3d at 653; *Moody v. Jefferson Parish Sch. Bd.*, *aff'd*, 2 F.3d 604 (5th Cir. 1993); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F. Supp. 1323, 1330 (N.D. Tex. 1988). Here, all the participants in the alleged conspiracy were employees and elected officials of the City of Trinidad. (Pl.'s Compl. [#1], ¶¶ 9-12.) Therefore, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claims.

Section 1985(3) prohibits a conspiracy "for the purpose of depriving directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. The Supreme Court has held that "the language requiring intent to deprive of equal protection or qual privileges and immunities, means there must be some racial or perhaps otherwise class-based…discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Here, Plaintiff cursorily alleges that the individual Defendants were involved in a conspiracy under § 1985(3). (*See* Pl.'s Compl. [#1], ¶¶ 78-84.) She does not, however, allege any class-based discriminatory animus on behalf of the individual Defendants. Instead, she baldly asserts that the Defendants attempted to suppress *her* reporting in one particular instance. She does not even offer allegations of discriminatory animus toward any other members of a class. Accordingly, even if the intracorporate conspiracy doctrine did not bar Plaintiff's conspiracy claim (which it does), the claim would still fail for its lack of the required factual elements.

It has long been recognized in the Fifth Circuit that § 1985 conspiracies are to be pleaded with particularity. *See Sparks v. Duval County Ranch Co.*, 604 F.2d 976, 978 & n. 3 (5th Cir.1979),

cert. denied, 445 U.S. 943 (1980). In *Sparks*, the plaintiff alleged that two of the parties to the conspiracy signed as sureties on an injunction bond with awareness of the unlawful purpose of the conspiracy by performing "a specific act to forward the conspiracy." *Id.* at n. 3. The "act in furtherance" element is essential to properly pleading a valid claim under § 1985(3). *See, e.g., Jacobs v. Port Neches Police Dep't*, No. 1:94-CV-767, 1996 WL 363023 at *4 n. 4 (E.D. Tex., June 26, 1996).

In the present case, Plaintiff does not allege with specificity that any of the Defendants performed any acts in furtherance of the alleged conspiracy. Instead, she merely speculates that all of the individual Defendants were in on the nebulous "conspiracy." Without pointing to any specific act, she states that her arrest was "coordinated through a conspiracy among all individual Defendants. (Pl.'s Compl. [#1], ¶ 30.) She attempts to tie Ms. Bannister to the "conspiracy" because of knowledge that she supposedly had about the problems with the City's municipal water supply. Even assuming, for the sake of argument, that Ms. Bannister had this type of knowledge, Plaintiff does not allege facts showing how she *acted* on the knowledge to the detriment of Plaintiff's constitutional rights. Though she claims that Chief Gregory and Officer Beckham also "committed overt acts in furtherance of the conspiracy," she does not allege specific facts as to what those acts were, when they were taken, and how they furthered the conspiracy. (*See* Pl.'s Compl. [#1], ¶ 81.) Because Plaintiff's conspiracy cause of action fails to allege facts with specificity, it must be dismissed with prejudice. Even if Plaintiff could show that her rights were violated due to a conspiracy, however, she has not pleaded that such conspiracy was the result of a policy, custom, or practice of the County, as discussed further hereinbelow.

***g. Plaintiff's claims for municipal liability fail because she fails to show a policy, custom, or widespread practice of constitutional violations attributable to the City.***

Each of Plaintiff's theories of municipal liability fail. Plaintiff must plead an official policy or custom, adopted by a policymaker, that was the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff pleads four municipal liability theories. (Pl.'s Compl. [#1], ¶¶ 97-103.) Each fails because, without a constitutional violation by a municipal actor, there is no municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). For the reasons set out in previous sections, no City of Trinidad officer violated Plaintiff's rights. Thus, each municipal-liability theory should be dismissed.

***i. Plaintiff's* Monell *claim fails because three dissimilar events are not evidence of a persistent, widespread pattern, and Plaintiff cites no other instances of failure to train or supervise.***

Plaintiff fails to plead a custom or widespread practice of First Amendment violations because she highlights only three dissimilar incidents. (Pl.'s Compl. [#1], ¶¶ 52, 55.) For municipal-liability purposes, a custom is a persistent, widespread practice of city officials or employees that is "so common and well settled as to…fairly represent[] municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

Prior incidents can be used to show a pattern when they have occurred for so long or so frequently that the course of conduct warrants attribution to a governing body. *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009). A pattern requires sufficiently numerous prior incidents, not merely isolated instances. *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1 989). Prior incidents must be similar and specific. *Peterson,* 588 F.3d at 851. Prior incidents cannot simply show any and all bad or unwise acts; rather, they must point to the specific violation in question. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

In this case, Plaintiff points the Court to only three events: the removal of a City Administrator, and alleged effort to remove a municipal judge from office, and the arrest of an individual holding a protest sign. (Pl.'s Compl. [#1], ¶¶ 52, 55.) Three incidents do not constitute a persistent, widespread practice. *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017) (rejecting the idea that three warrantless arrests over three and a half years established a custom); *Peterson*, 588 F.3d at 851-52 (rejecting the idea that twenty-seven citizen complaints of excessive force established a custom).

The events highlighted by Plaintiff describe, at most, isolated episodes and not entrenched municipal practice. *McConney,* 863 F.2d at 1184. Two of the three incidents cited (the removal of the administrator and the alleged pressure on the municipal judge) do not even involve arrests by the Trinidad Police Department. There is no indication that the third (the arrest of the individual with the protest sign) had anything at all to do with Facebook posts which could potentially raise alarm among the City's population – such as in issue here. Thus, this *one* incident cannot reasonably be construed to show a widespread, persistent custom such as is necessary to establish a *Monell* violation.

A custom requires persistence. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that liability for an unwritten custom requires a practice so persistent and widespread that it effectively operates as municipal policy). Without similarity and specificity between prior incidents, there can be no custom for *Monell* purposes. *Peterson*, 588 F.3d at 851.

Plaintiff will doubtless point to the incidents she has cited as evidence of "retaliation" on the party of the City. However, the similarity requirement demands specificity so that a plaintiff cannot manufacture a pattern by naming the alleged violation abstractly. *Peterson*, 588 F.3d at 851 (holding that prior incidents cannot simply be all bad acts). In other words, the “retaliation”

label assumes its own conclusion. Whether each incident was retaliatory is a legal conclusion the Court does not accept as true. *Iqbal*, 556 U.S. at 678. The facts of those prior incidents need to be similar to the facts of this alleged incident. *Peterson*, 588 F.3d at 851-52 (analyzing the context in which twenty-seven claims of an excessive use of force was alleged).

Plaintiff's failure-to-train theory fails for the same reason. A municipality is not liable simply because one of its officers is inadequately trained. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Inadequate training supports liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and only where that failure reflects a "deliberate" or "conscious" choice by the municipality that can fairly be called a policy. *Id.* at 388-89. The Plaintiff must connect the identified deficiency in a city's training program to the injury and the deficiency must have *actually caused* the constitutional violation. *Id*. at 391.

Plaintiff does not identify any specific training the City failed to provide, any obvious need for it, or any way in which a First Amendment retaliation or unlawful-arrest violation was the "highly predictable" result of a gap in Trinidad's program. Plaintiff pleads no pattern of prior similar violations and no facts about Trinidad's training program. Municipal liability cannot rest on a bare allegation that the existing training program represents a policy for which the city is responsible, nor on the observation that an injury could have been avoided had an officer received better training; this is obvious, because such a claim could be made about almost any encounter resulting in injury. *Harris*, 489 U.S. at 389-91.

A plaintiff is required to plead specific facts about the training deficiency rather than simply stating that officers were untrained. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (holding that a description of policy or custom and its relationship to underlying

constitutional violation cannot be conclusory; it must contain specific facts). Because Plaintiff pleads neither a pattern nor any facts about the City's training, the failure-to-train theory should be dismissed.

Plaintiff pleads only her own arrest, a single incident, no pattern of similar prior violations, and no facts supporting her failure-to-train claim. Plaintiff's municipal liability claims should therefore be dismissed for failure to plead a custom or widespread practice.

***ii. The City did not ratify any unconstitutional activity because there is no pattern of constitutional violations.***

Plaintiff's ratification theory also fails. Ratification is limited to "extreme factual situations." *Peterson*, 588 F.3d at 848. Unless a subordinate's actions are sufficiently extreme, a policymaker's defense of a subordinate's actions is insufficient to establish a policy or custom. *Peterson*, 588 F.3d at 848; *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir.1985). In one sentence, Plaintiff alleges that "[b]y permitting, failing to investigate, and failing to remedy the pattern of constitutional violations described herein, including those directly attributable to its senior policymaker, Chief Gregory, the City of Trinidad has ratified those violations and rendered them…official policy…" (Pl.'s Compl. [#1], ¶ 103.)

The Fifth Circuit has found an "extreme factual situation" supporting a ratification theory where officers "poured" gunfire onto a truck, killing an innocent passenger. *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), but did not find ratification where an officer shot a fleeing suspect in the back. *Snyder*, 142 F.3d at 798. Further, the Fifth Circuit has explained that "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur municipal liability on a theory of ratification.

Here, Plaintiff does not offer any factual allegation of an extreme action by a subordinate of Chief Gregory. Unlike in the cases cited above by the Fifth Circuit, no one was shot. Thus,

there cannot be said to have been an "extreme" action such as the Court requires to find ratification. Further, as has been previously shown, there is no pattern of similar unconstitutional activity for the City to have ratified in any event. The three disparate incidents highlighted by Plaintiff do not pass legal muster to establish a widespread custom. Thus, it stands to reason that the City could not have "ratified" such a custom.

***h. Plaintiff is not entitled to declaratory relief because there is no ongoing conduct violating her constitutional rights.***

Plaintiff seeks a declaration that: (1) her Facebook post about the municipal water supply is speech protected by the First Amendment; (2) that Texas Penal Code § 42.06 does not apply to her conduct as a matter of law; (3) her prosecution was retaliatory; (4) the statement on the Trinidad Police Department's Facebook page is viewpoint-based governmental suppression of protected expression; (5) there was no probable cause supporting Plaintiff's arrest; (6) that the individual Defendants violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments; and (7) the City's policies, customs, and practices of retaliation are unconstitutional. (Pl.'s Compl. [#1], ¶¶ 104-106.) When considering an action for declaratory judgment, the Court must ask (1) whether an actual controversy exists between the parties; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss the declaratory action. *Frye v. Anadarko Petroleum Corp*., 953 F.3d 285, 294 (5th Cir. 2019) (quotation and citation omitted).

Declaratory judgment is "a proper way for individuals to proceed to ensure that their constitutional rights are protected." *See Brister v. Faulkner*, 214 F.3d 675, 681 (5th Cir. 2000) (citing *Steffel v. Thompson*, 415 U.S. 452 (1974) ). To assert a claim under the Declaratory Judgment Act, a plaintiff must show that there is “substantial and continuing controversy” between the parties, the dispute will continue, and “either continuing harm or a real and immediate threat

of repeated injury in the future." *Sowers v. Darby*, No. 2:07CV11-SA-SAA, 2009 WL 742730, at *5 (N.D. Miss. Mar. 17, 2009). Declaratory relief is purely discretionary, and courts have the power to dismiss a claim for declaratory relief where it is duplicative of claims asserted in a lawsuit. *Ladd v. Colonial Sav., F.A*, No. 3:13-CV-1817-P, 2014 WL 1393038, at *5 (N.D. Tex. Apr. 10, 2014).

Even if Plaintiff could meet her burden of establishing that her constitutional rights were violated, she cannot show there is any more than a recurrent violation – and it is clear from her pleading that there is no continuing conduct violating her rights. She has not pleaded any other events than a single arrest to support the issuance of a declaratory judgment.

***i. Plaintiff is likewise not entitled to a permanent injunction because there is no ongoing violation.***

Plaintiff also seeks injunctive relief including: (1) an order dismissing the criminal charge against Plaintiff; (2) an order enjoining all individual Defendants from "initiating, pursuing, directing, or facilitating any criminal investigation or prosecution" of Plaintiff based on constitutionally-protected speech; (3) enjoying the City and Chief Gregory from publishing official statements regarding criminal conduct; and (4) requiring the City to implement "constitutionally adequate First Amendment training for all members of the Trinidad Police Department." (Pl.'s Compl. [#1], ¶¶ 107-111.) To obtain permanent injunctive relief, a plaintiff must demonstrate: '(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.' " *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

When she complains of a constitutional violation, a plaintiff must show the existence of continuing irreparable injury in the absence of the injunction. *Newman v. State of Alabama*, 683 F.2d 1312, 1319 (11th Cir. 1982), *cert. den.*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). Plaintiff's entire Complaint turns on a single arrest and her contention that her constitutional rights were violated on one occurrence. As with her declaratory judgment action, the lack of an ongoing violation also precludes this Court from issuing the requested permanent injunction.

## V.
## CONCLUSION

All individual defendants are entitled to the defense of qualified immunity from all of Plaintiff's claims. Further, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim and, in any event, she has not sufficiently pleaded a factual basis for a conspiracy. Likewise, she has not stated a claim for municipal liability against the City of Trinidad or entitlement to declaratory or injunctive relief. Therefore, this Court may dismiss all claims against all defendants.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court dismiss Plaintiff's claims for failure to state a claim upon which relief may be granted, and seek any and all other relief, at law or in equity, to which they may show themselves to be justly entitled.

Respectfully submitted,



**Arron P. Swink**
State Bar No. 24079428
arron@iglesiaslawfirm.com

**David Iglesias**
Lead Counsel

State Bar No. 24051733
david@iglesiaslawfirm.com

**Zachary T. Smith**
State Bar No. 24140683
zachary@iglesiaslawfirm.com

**IGLESIAS, PLLC**
501 Shelley Drive, Suite 125
Tyler, Texas 75701
Telephone: (903) 944-7185
Facsimile: (903) 630-5338

*Dallas Office:*
1412 Main Street, Suite 608
Dallas, Texas 75202

**COUNSEL FOR DEFENDANTS, CHARLES W. GREGORY, CAMERON W. BECKHAM, MARIE BANNISTER, AND THE CITY OF TRINIDAD, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.



Arron Swink