**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **JENNIFER LYNN COMBS,** | § | |
| **Plaintiff,** | § | **Civil Action No.** |
| | § | **6:26-cv-00235-JCB-JDL** |
| **v.** | § | |
| | § | |
| **CHARLES W. GREGORY, et. al.,** | § | **JURY TRIAL DEMANDED** |
| **Defendants.** | § | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

# TABLE OF CONTENTS


**TABLE OF CONTENTS** ....................................................................2

**TABLE OF AUTHORITIES** ....................................................................3

**I. INTRODUCTION** ....................................................................6

**II. RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES**............8

**III. STANDARD OF REVIEW** ....................................................................9

**A. A complaint pleads. It does not prove.**....................................................9

**B. Qualified immunity asserted at the pleading stage does not raise the pleading bar.**....................................................................10

**C. Defendants rely on facts outside the pleadings.** ........................................11

**D. Probable cause is a contested allegation, not a premise the Court may adopt.**....................................................................12

**IV. ARGUMENT** ....................................................................13

**A. There was no probable cause, and no arguable probable cause, because Section 42.06 does not reach Mrs. Combs' conduct.** ......................................13

***1. The statute's elements.***....................................................................13

***2. The Complaint negates every element.***....................................................14

***3. Causing alarm is not an element. Knowing falsity is.*** ...............................15

***4. No prosecutor and no grand jury found probable cause.*** ................. **Error! Bookmark not defined.**

***5. "Arguable" probable cause is measured against the statute, not against the officer's confidence.***....................................................................17

***6. Defendants brief the wrong statute.*** ........................................................17

**B. The independent intermediary doctrine does not shield Defendants on the pleadings.**....................................................................18

***1. Defendants concede the exception that decides this issue.*** .......................18

***2. Defendants' authority is summary judgment authority.*** ...........................19

***3. The Complaint pleads taint with particularity.*** .........................................20

***4. Defendants' denial that anything was withheld is a denial, not a pleading defect.*** ....................................................................21

***5. A magistrate who is not neutral and detached is not an independent intermediary.*** ....................22
**C. The First Amendment retaliation claim states a claim, and *Gonzalez v. Trevino* forecloses Defendants' comparator argument.** ....................23
**D. Villarreal does not control.** ....................25
**E. The right at issue was clearly established.** ....................26
**F. The viewpoint discrimination and prior restraint claims survive.** ....................28
**G. Laird v. Tatum is inapposite. Mrs. Combs was arrested.** ....................29
**H. Chief Gregory's personal involvement is pleaded. This is not respondeat superior.** ....................30
**I. Councilwoman Bannister's personal involvement is pleaded.** ....................31
**J. The conspiracy claims state a claim.** ....................33
***1. The intracorporate conspiracy doctrine does not bar the Section 1983 claim.*** ....................33
***2. The personal purposes exception applies.*** ....................34
***3. An agreement and overt acts are pleaded.*** ....................34
***4. The Section 1985(3) claim is pleaded and preserved.*** ....................35
**K. The municipal liability claim requires no pattern, because the actor was the City's final policymaker.** ....................36
***1. A single act of a final policymaker is official policy.*** ....................36
***2. Gregory is alleged to be the City's final policymaker for law enforcement.*** ....................37
***3. The failure to train theory survives independently.*** ....................38
***4. Ratification.*** ....................39
***5. In the alternative, the pattern allegations suffice, and any deficiency is curable.*** ....................39
**L. The claims for declaratory and injunctive relief are properly pleaded.** ....................41
**V. IN THE ALTERNATIVE, LEAVE TO AMEND** ....................42
**VI. CONCLUSION** ....................43

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Valdez, 845 F.3d 580, 590 (5th Cir. 2016) .................... 6, 10, 11

Arnold v. Williams, 979 F.3d 262, 266-67 (5th Cir. 2020) ....... 6
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ....... 9, 21
Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) ....... 41
Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012) ....... 11
Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67-68 (1963) ....... 29
Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 405 (1997) ....... 37
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) ....... 9
Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998) ....... 33
Buehler v. City of Austin, 824 F.3d 548 (5th Cir. 2016) ....... 19
Cicalese v. Univ. of Tex. Med. Branch, 924 F.3d 762, 766-68 (5th Cir. 2019) ....... 10
Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994) ....... 34
City of Canton v. Harris, 489 U.S. 378, 390 & n.10 (1989) ....... 38
City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) ....... 38
Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) ....... 12
Connick v. Myers, 461 U.S. 138, 145 (1983) ....... 23
Connick v. Thompson, 563 U.S. 51, 62 (2011) ....... 37
Coolidge v. New Hampshire, 403 U.S. 443, 453 (1971) ....... 23
Franks v. Delaware, 438 U.S. 154, 171-72 (1978) ....... 21, 22
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189-90 (2000) ....... 41
Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975) ....... 26
Gonzalez v. Trevino, 602 U.S. 653 (2024) ....... 8, 24
Grandstaff v. City of Borger, 767 F.2d 161, 168-69 (5th Cir. 1985) ....... 39
Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) ....... 35
Groden v. City of Dallas, 826 F.3d 280, 284 (5th Cir. 2016) ....... 38, 40
Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988) ....... 21, 22
Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994) ....... 33
Hope v. Pelzer, 536 U.S. 730, 741 (2002) ....... 27
Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) ....... 38
Keenan v. Tejeda, 290 F.3d 252, 261-62 (5th Cir. 2002) ....... 8, 23, 24, 27
Kimble v. D.J. McDuffy, Inc., 648 F.2d 340, 346-47 (5th Cir. 1981) ....... 36
Konan v. U.S. Postal Serv., 96 F.4th 799, 805 (5th Cir. 2024) ....... 34
Laird v. Tatum, 408 U.S. 1 (1972) ....... 29
Littell v. Houston Indep. Sch. Dist., 894 F.3d 616, 624 (5th Cir. 2018) ....... 38, 40
Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) ....... 12, 21
Malley v. Briggs, 475 U.S. 335, 345 & n.9 (1986) ....... 23, 26
Matal v. Tam, 582 U.S. 218, 235 (2017) ....... 28
McLin v. Ard, 866 F.3d 682, 690 (5th Cir. 2017) ....... 19, 20
Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000) ....... 17

Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)....36
Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)....30
Newberry v. E. Tex. State Univ., 161 F.3d 276, 281 n.2 (5th Cir. 1998)....35
Nieves v. Bartlett, 587 U.S. 391, 402 (2019)....24
NRA v. Vullo, 602 U.S. 175 (2024)....28
Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)....37
Pleasant Grove City v. Summum, 555 U.S. 460 (2009)....28
Rogers v. Jarrett, 63 F.4th 971, 974-78 (5th Cir. 2023)....28
Sanders-Burns v. City of Plano, 594 F.3d 366, 372 (5th Cir. 2010)....9
Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995).... 10, 11, 42
Snyder v. Phelps, 562 U.S. 443, 452 (2011)....23
Speech First, Inc. v. Fenves, 979 F.3d 319 (5th Cir. 2020).... 30, 41
Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78, 81 (2013)....41
Steffel v. Thompson, 415 U.S. 452, 462 (1974)....42
Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158-59 (2014).... 30, 41
Taylor v. Riojas, 592 U.S. 7, 8-9 (2020)....27
Trevino v. Iden, 79 F.4th 524, 533-35 (5th Cir. 2023).... 14, 19
United Bhd. of Carpenters v. Scott, 463 U.S. 825, 836 (1983)....35
Villarreal v. Alaniz, 145 S. Ct. 368 (2024)....25
Villarreal v. City of Laredo, 134 F.4th 273 (5th Cir. 2025)....25
Villarreal v. City of Laredo, 94 F.4th 374 (5th Cir. 2024).... 25, 26
Walker v. Tex. Div., Sons of Confederate Veterans, Inc., 576 U.S. 200, 208 (2015)....28
Watsky v. Williamson County, No. 1:21-CV-374-RP (W.D. Tex. July 15, 2024).33
Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984)....36
Wicks v. Miss. State Emp't Servs., 41 F.3d 991, 994 (5th Cir. 1995).... 11, 40, 42
Wilson v. Stroman, 33 F.4th 202, 208-11 (5th Cir. 2022)....20
Winfrey v. Rogers, 901 F.3d 483, 494-95 (5th Cir. 2018).... 21, 22
Younger v. Harris, 401 U.S. 37 (1971)....42
Zarnow v. City of Wichita Falls, 614 F.3d 161, 169 (5th Cir. 2010).... 36, 37
Ziglar v. Abbasi, 582 U.S. 120, 153-54 (2017)....33

**Statutes**

42 U.S.C. § 1983....9
42 U.S.C. § 1985(3)....9
Tex. Penal Code § 42.06.... 7, 13, 25
Tex. Penal Code § 42.06(a)....15
Tex. Penal Code § 46.04(a)....17

**Rules**

Fed. R. Civ. P. 12(b)(6).... passim

Fed. R. Civ. P. 15(a)(2) .......... 42, 43
Fed. R. Civ. P. 7(a) .......... 11, 42
Fed. R. Civ. P. 8 .......... 32
Fed. R. Civ. P. 9(b) .......... 10, 22
Local Rule CV-7(a)(1) .......... 8

Other Authorities

Alexander A. Reinert, Qualified Immunity and Federalism, 111 Cal. L. Rev. 201 (2023) .......... 28

## I. INTRODUCTION

Defendants ask this Court to do something Rule 12(b)(6) does not permit. They ask it to weigh evidence, to resolve contested facts in their own favor, and then to dismiss a civil rights complaint with prejudice because Plaintiff has not yet proved what she has pleaded. Their motion faults Mrs. Combs for "providing no evidence," for "[c]iting no examples," and for "document[ing] nothing." Mot. 3, 14. Those are summary judgment arguments. They have no place in a motion directed at the sufficiency of a pleading.

The purpose of the qualified immunity inquiry at this stage is to test the complaint itself, within its four corners, not to demand proof of it. A Plaintiff answering a Rule 12(b)(6) motion must plead facts. She need not prove them, corroborate them, or attach exhibits establishing them. The Fifth Circuit has said so directly: a defendant's assertion of qualified immunity in a motion to dismiss "does not subject the complaint to a heightened pleading standard." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016); *accord Arnold v. Williams*, 979 F.3d 262, 266-67

(5th Cir. 2020). Rule 8 governs. Rule 9 does not. Mrs. Combs' 114-paragraph Complaint pleads dates, statements, actors, motives, and documents. Whether she can ultimately prove each allegation is a question for summary judgment or trial. It is not a question presented by this motion.

The motion's load-bearing premise is that "arguable probable cause existed to believe that Plaintiff had violated §42.06 of the Texas Penal Code." Mot. 4. That is not a fact the Court may assume. It is a legal conclusion, and it is contradicted by the statute's text, by the Complaint, and by everything that has happened since. Section 42.06 reaches a person who "knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless." Tex. Penal Code § 42.06(a). Mrs. Combs relayed what members of her community told her about the water coming out of their taps. She initiated no emergency, summoned no responders, and reported nothing she knew to be false. To the contrary, the City itself issued a boil water notice days later, and citizens replying to the Police Department's own posts confirmed that they had been hospitalized after drinking the City's water. Compl. ¶¶ 25-27.

Nor did probable cause exist anywhere outside the Defendants' own minds. The Complaint alleges that no probable cause existed, that Section 42.06 does not reach the conduct described, and that the charge was brought to punish Mrs. Combs

for her reporting. Compl. ¶¶ 23, 29-34, 90-94. On a motion under Rule 12(b)(6) those allegations are true. Defendants ask the Court to assume the opposite.

That request illuminates what this motion actually is. It is clearly established, and has been for decades, that a police officer may not arrest a person without probable cause, and that officials may not use the criminal law to punish a citizen for speech about a matter of public concern. *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002); See also *Gonzalez v. Trevino*, 602 U.S. 653 (2024). Defendants do not seriously contend otherwise. They contend instead that Mrs. Combs must, before discovery has begun, produce comparator evidence, prove that a magistrate's deliberations were tainted, prove the content of the Defendants' agreement, and document a pattern of prior violations. Each of those demands asks for evidence that lies exclusively in Defendants' hands. A motion that can be granted only by requiring a plaintiff to prove her case before she is permitted to seek discovery of it is not a test of the pleadings. Whatever its intent, its effect is delay. The Court should deny it.

## II. RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES

Pursuant to Local Rule CV-7(a)(1), Plaintiff responds to Defendants' statement of the issues as follows:

1. Whether the individual Defendants are entitled to qualified immunity on the face of the Complaint, where the Complaint alleges that they charged a journalist

under a statute that does not reach her conduct, that no probable cause or arguable probable cause supported the arrest, and that the right to be free from arrest without probable cause and from retaliatory prosecution for protected speech was clearly established. They are not.

2. Whether Plaintiff has stated a claim for conspiracy under 42 U.S.C. § 1983 and § 1985(3), where the Complaint alleges a specific agreement, identified overt acts by each Defendant, and personal motives that place the alleged agreement outside the intracorporate conspiracy doctrine. She has.

3. Whether Plaintiff has stated a municipal liability claim against the City of Trinidad, where the Complaint alleges that the City's senior law enforcement policymaker personally directed the prosecution and announced on the Department's official platform that such speech "is a state jail felony." She has, and no pattern of prior violations is required.

4. Whether Plaintiff has stated a claim for declaratory and injunctive relief. She has.

## III. STANDARD OF REVIEW

### A. A complaint pleads. It does not prove.

On a Rule 12(b)(6) motion the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010). The question is plausibility, not proof.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). A district court "errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a claim," and detailed inquiries into the sufficiency of a plaintiff's proof "are better suited to summary judgment." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766-68 (5th Cir. 2019).

That principle answers most of Defendants' motion. Defendants object that Plaintiff pleads "[w]ithout providing evidence," Mot. 3, that she "[c]it[es] no examples," id., that she "actually documents nothing," Mot. 14, and that her pleading is "speculative," id. Every one of those objections asks for evidentiary support that Rule 8 does not require and that Rule 12(b)(6) does not permit the Court to demand. Malice, intent, knowledge, and other conditions of mind "may be alleged generally." Fed. R. Civ. P. 9(b). If the complaint had pled that Defendant bit her dog, she would not be required to produce bite marks or even a dog at the pleading stage; the mere allegation that Defendants bit her dog is the plea.

**B. Qualified immunity asserted at the pleading stage does not raise the pleading bar.**

Defendants invoke qualified immunity and then treat that invocation as though it shifted an evidentiary burden onto Plaintiff. Mot. 6, 9. It does not. When qualified immunity is asserted in an answer or a motion to dismiss, "the district court must" do no more than determine whether the plaintiff has filed "a short and plain statement of his complaint, a statement that rests on more than conclusions alone."

*Anderson*, 845 F.3d at 590 (quoting *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc)). The heightened standard "derived from Rule 9 does not apply to the complaint" merely because a motion to dismiss asserts the defense. Id. The plaintiff must plead facts that, "if true, would overcome the defense of qualified immunity." *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995); *accord Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "If true" is the operative phrase. It presumes the absence of proof at this stage.

If the Court believes any aspect of the Complaint requires further specificity as to the qualified immunity defense, the remedy prescribed by the Fifth Circuit is a reply under Rule 7(a) tailored to that defense, not dismissal with prejudice. *Schultea*, 47 F.3d 1427; *Anderson*, 845 F.3d at 590. Plaintiff stands ready to file such a reply.

**C. Defendants rely on facts outside the pleadings.**

While faulting Plaintiff for pleading without evidence, Defendants supply their own. They assert that "Officer Beckham found probable cause that a crime had occurred during his investigation," that "a district judge issued a search warrant," and that "a justice of the peace issued a valid arrest warrant based on Defendant Beckham's probable cause affidavit." Mot. 12. None of that appears in the Complaint. No affidavit is attached to the motion. No warrant is in the record. The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to

the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *accord Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Defendants' characterization of an affidavit no one has seen is not a fact this Court may credit, and the adjective "valid" is precisely what is in dispute.

**D. Probable cause is a contested allegation, not a premise the Court may adopt.**

A third feature of the motion requires comment because it runs through everything that follows. Defendants assert that probable cause and arguable probable cause existed, and they then reason from that assertion as though it had been decided. Mot. 4, 9-13. It has not been decided. It has been denied. The Complaint alleges that no probable cause existed, that Section 42.06 does not reach the conduct described, and that the officers who charged Mrs. Combs proceeded without regard to what the statute requires. Compl. ¶¶ 23, 29-34, 90-94. On a Rule 12(b)(6) motion those allegations are true.

The point is not academic, because probable cause is the hinge on which the rest of the motion turns. It is the predicate for the qualified immunity argument, Mot. 6-13; for the *Nieves* argument, Mot. 15; and for the independent intermediary argument, Mot. 11-12. A movant may not supply a contested fact by assertion and then build three defenses on top of it. Defendants are entitled to argue that the Complaint fails to allege the absence of probable cause. They are not entitled to have

the Court assume the opposite of what it alleges. Where the existence of probable cause depends on facts the pleading denies, the question is not resolved at the pleading stage.

## IV. ARGUMENT

### A. There was no probable cause, and no arguable probable cause, because Section 42.06 does not reach Mrs. Combs' conduct.

Everything in Defendants' motion depends on the assertion that a reasonable officer could have believed Mrs. Combs violated Tex. Penal Code § 42.06. Mot. 4, 9-13. Read against the statute, that assertion collapses.

#### *1. The statute's elements.*

Section 42.06(a) makes it an offense to "knowingly initiate[], communicate[] or circulate[] a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily" (1) cause action by an emergency agency, (2) place a person in fear of imminent serious bodily injury, or (3) prevent or interrupt the occupation of a building or conveyance. Tex. Penal Code § 42.06(a). The offense is a Class A misdemeanor "unless the false report is of an emergency involving" one of the enumerated public services, "in which event the offense is a state jail felony." Id. § 42.06(b).

Three features of that text matter. First, the statute requires a report of an emergency. It is a false alarm statute, situated among offenses concerning disorderly conduct and public alarm, and its enumerated subjects are bombings and fires.

Second, it requires actual subjective knowledge of falsity. The report must be one the speaker "knows is false or baseless." Recklessness will not do; being wrong will not do. Third, the felony grading provision in subsection (b) contains its own emergency requirement. It applies only where "the false report is of an emergency involving" a public water, gas, or power supply. A report about ongoing conditions in a municipal water system is not a report of an emergency, and Defendants nowhere explain how it could be.

***2. The Complaint negates every element.***

The Complaint alleges that Mrs. Combs published a Facebook post relaying accounts she had received from community members that the City's drinking water was unsafe and that at least one person had been hospitalized after consuming it. Compl. ¶¶ 20-21. It alleges that she "did not fabricate an emergency," "did not summon emergency responders," and "did not trigger evacuations." Id. ¶ 23. It alleges that no emergency response followed. Id. ¶¶ 23, 90. And it alleges that her report was accurate: the City issued an official boil water notice shortly afterward, id. ¶ 25, and multiple citizens stated on the Police Department's and City Hall's own social media pages that they had been hospitalized or sickened by the water, id. ¶ 27. Accepted as true, those allegations establish that Mrs. Combs did not initiate a report of an emergency, did not know any statement to be false, and did not communicate anything false at all.

Defendants incredibly respond that "not every element of a crime is required for probable cause." Mot. 12 (citing *Trevino v. Iden*, 79 F.4th 524, 533-35 (5th Cir. 2023)). That proposition does not carry them where they need to go. The question is not whether one element was thin. It is whether a statute directed at bomb threats and false fire alarms can be stretched to reach a journalist's accurate social media post about municipal water quality. Probable cause requires a fair probability that a crime occurred. Where the conduct described in the affidavit is not the conduct the statute prohibits, there is no fair probability of anything.

***3. Causing alarm is not an element. Knowing falsity is.***

A substantial part of Defendants' probable cause discussion is addressed to the effect of Mrs. Combs' post rather than to its truth. See Mot. 9-13. The argument is that the post alarmed residents of a small town, that it spread quickly, and that the City was left to answer for it. Assume all of that. None of it is an element of Section 42.06.

The statute punishes a report the speaker "knows is false or baseless." Tex. Penal Code § 42.06(a). Knowledge of falsity is the mens rea, and it is the only mens rea the statute supplies. A report that alarms the public and is true is not an offense in Texas. Neither is a report that alarms the public and is honestly believed. The Legislature wrote the statute to reach the person who phones in a bomb threat or pulls a fire alarm, which is why the enumerated subjects are bombings and fires and

why the offense sits among the offenses against public order and decency. It does not reach the person whose accurate warning frightens her neighbors. Alarm caused by a true report is not evidence of a crime. It is a measure of how much the public needed to hear it.

The distinction is the whole of the constitutional problem in this case. If public alarm supplied probable cause under Section 42.06, then any citizen who reported a hazard that turned out to be real could be charged whenever officials disliked the reaction, and the charge would be easiest to bring in exactly the cases where the reporting mattered most. The Complaint forecloses that path on these facts. It alleges that the City issued an official boil water notice within days of the post, Compl. ¶ 25, and that citizens stated on the Police Department's and City Hall's own pages that they had been hospitalized or sickened by the water, id. ¶ 27. Those allegations do not merely negate knowledge of falsity. Taken as true, they establish that the report was accurate. An accurate report does not violate Section 42.06 no matter whom it alarms.

Defendants nowhere identify a fact, pleaded or otherwise, from which any officer could have concluded that Mrs. Combs knew her statement to be false when she published it. That silence is dispositive, because knowing falsity is the element the offense is built around. An argument that establishes alarm and stops there has established that the speech had an audience, not that a crime occurred.

***4. "Arguable" probable cause is measured against the statute, not against the officer's confidence.***

Arguable probable cause asks whether a reasonable officer could have believed an offense occurred. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). It is an objective standard, and it is measured against the law the officer purported to enforce. The Complaint alleges that the lead investigator admitted, the day after the charge was announced, that he does not consider and is not aware of current case law governing the statutes he enforces, and that the Department has not received First Amendment training in years. Compl. ¶¶ 32-34, 91. An investigator who does not consult the law cannot have formed a reasonable belief about what the law permits. At a minimum, whether a reasonable officer could have read § 42.06 to cover this post is a legal question the Court can resolve on the statute's text, and the text answers it in Plaintiff's favor.

***5. Defendants brief the wrong statute.***

The clearly established analysis in Defendants' motion is not addressed to the statute under which Mrs. Combs was charged. At page 9 the motion argues that "the law was not clearly established under Texas Penal Code § 46.04." Mot. 9. Section 46.04 is captioned Unlawful Possession of Firearm. It makes it an offense for a person convicted of a felony to possess a firearm. Tex. Penal Code § 46.04(a). Mrs. Combs was not charged with possessing a firearm. She was charged under Section 42.06, over a Facebook post about the City's drinking water. Compl. ¶¶ 20-22, 29.

Plaintiff does not raise the error to score a point. It matters for two reasons.

First, on the second prong of the qualified immunity inquiry, Defendants have briefed a statute that is not in this case and have offered no clearly established analysis tied to the statute that is. The Court is not obliged to construct the argument a movant did not make, and Plaintiff should not be required to guess at it in a response. To the extent the motion seeks dismissal on the ground that the law was not clearly established as to Section 42.06, the motion does not contain that argument.

Second, and more to the point, the error is of a piece with the defect that produced this lawsuit. As set out above, the Complaint alleges that the lead investigator does not consult the current case law governing the statutes he enforces and that the Department has not received First Amendment training in years. Compl. ¶¶ 32-34, 91. The arrest was never tethered to the text of any statute, and the defense of it now repeats the same disconnection at the precise point where the governing law is supposed to be identified. Whatever else that reflects, it is not the record of officials who matched conduct to law before charging a journalist with a felony.

**B. The independent intermediary doctrine does not shield Defendants on the pleadings.**

***1. Defendants concede the exception that decides this issue.***

Defendants devote much of their causation argument to the independent intermediary doctrine. Mot. 11-12. They also state its limits. Their motion

acknowledges that the doctrine breaks the chain of causation only where the intermediary's deliberations are untainted, and that the protection is lost where officials withheld relevant or material information from the magistrate or otherwise tainted the magistrate's decision. That concession frames the only question presented. The parties do not disagree about the rule. They disagree about whether the Complaint pleads facts within the exception. That is a question about the sufficiency of a pleading, and it is answered by reading the pleading.

The doctrine is a rule of causation, not a grant of immunity, and it operates only so long as its premise holds. Where taint is pleaded, the doctrine does not supply a ground for dismissal; it supplies a disputed fact. Defendants' own framing therefore concedes that this ground can carry the motion only if the Court concludes that the Complaint offers nothing beyond a bare assertion of taint. It offers a great deal more.

***2. Defendants' authority is summary judgment authority.***

Defendants build their independent intermediary argument on the rule that "mere allegations of 'taint,' without more, are insufficient." Mot. 11 (citing *Buehler v. City of Austin*, 824 F.3d 548 (5th Cir. 2016)). That sentence is a summary judgment rule, and the Fifth Circuit has said so in terms: "although our precedent demonstrates that 'mere allegations of "taint"' are insufficient at summary judgment, such allegations may be adequate to survive a motion to dismiss where the complaint

alleges other facts supporting the inference." *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017) (reversing dismissal). *Trevino v. Iden*, the case Defendants lead with, reaffirms that very rule. 79 F.4th at 530 (citing McLin). *Buehler and the remaining authorities Defendants marshal on this point were all decided on summary judgment records. Mot. 11-12.* This case has no record.

***3. The Complaint pleads taint with particularity.***

The Complaint does not offer a bare assertion of taint. It alleges a specific mechanism. Defendant Gregory bypassed the City's own municipal judge, an officer who had been openly critical of his unconstitutional practices and who had refused to sign constitutionally deficient warrant applications, and sought out a Justice of the Peace with documented political conflicts and public disagreements with Mrs. Combs. Compl. ¶¶ 36-38, 51. It alleges that Gregory knew of those conflicts and selected that magistrate "because of, not despite, them." Id. ¶ 37. It alleges that the selection reflected Gregory's awareness that the application "was constitutionally deficient" and would not "survive neutral judicial scrutiny." Id. ¶ 38. And it alleges that Gregory and Bannister were simultaneously working to constructively terminate the municipal judge for refusing to participate. Id. ¶¶ 39, 51. Those are facts, pleaded with dates, actors, and motives. They are the sort of "other facts supporting the inference" that *McLin* holds sufficient. 866 F.3d at 690.

The Complaint further alleges that the warrant application omitted what any honest application would have included: that the City had issued a boil water notice corroborating the post, and that citizens had publicly reported hospitalizations on the Department's own page. Compl. ¶¶ 25-27, 94. Material omissions satisfy the taint exception. "Any misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); see *Winfrey v. Rogers*, 901 F.3d 483, 494-95 (5th Cir. 2018) (corrected affidavit analysis includes "material omissions"); *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). A properly pleaded *Franks* or *Malley* violation is itself an exception to the doctrine. *Wilson v. Stroman*, 33 F.4th 202, 208-11 (5th Cir. 2022) (reversing dismissal).

***4. Defendants' denial that anything was withheld is a denial, not a pleading defect.***

Defendants assert that Gregory and Beckham did not knowingly withhold information from the magistrate. Mot. 11-12. That is a denial of an allegation. It is not an argument that the allegation is absent, or vague, or implausible. Rule 12(b)(6) does not permit a defendant to defeat a claim by contradicting it, and the Court does not weigh the competing account at this stage. *Iqbal*, 556 U.S. at 678-79.

The assertion also rests on materials that are not before the Court. The warrant application, the supporting affidavit, and whatever was said to the magistrate in support of them are the only things that could establish what was disclosed and what

was not. None of them is attached to the Complaint or to the motion. *Lone Star Fund V*, 594 F.3d at 387. Defendants ask the Court to find, on a motion testing a pleading, that a document no one has produced was complete and candid.

Finally, the assertion is addressed to state of mind, which is the one subject Rule 9 expressly relieves a plaintiff of pleading with particularity. Knowledge and intent "may be alleged generally." Fed. R. Civ. P. 9(b). The Complaint does considerably more than that. It identifies what an honest application would have contained and did not: the City's own boil water notice, and the citizen reports of hospitalization published on the Department's own page. Compl. ¶¶ 25-27, 94. It alleges that the application was constitutionally deficient and that Gregory knew it would not survive neutral judicial scrutiny, which is why he went to a different magistrate. Id. ¶¶ 37-38. Material omissions are the paradigm case for the exception. *Hand*, 838 F.2d at 1428; *Winfrey*, 901 F.3d at 494-95; *Franks*, 438 U.S. at 171-72.

Whether the magistrate was in fact misled, and by whom, is the question this case exists to answer. It cannot be answered from the pleadings, and on this motion it is answered in Plaintiff's favor. Plaintiff is contemporaneously seeking leave to amend in order to plead additional facts bearing on the warrant application and on what the magistrate was and was not told.

***5. A magistrate who is not neutral and detached is not an independent intermediary.***

The doctrine's premise is an "impartial intermediary" whose "independent" decision breaks the causal chain. *Hand*, 838 F.2d at 1427. Where the magistrate is not neutral and detached, that premise fails at the outset. A search or seizure authorized by an official who "was not the neutral and detached magistrate required by the Constitution" "stands on no firmer ground than if there had been no warrant at all." *Coolidge v. New Hampshire*, 403 U.S. 443, 453 (1971). The Complaint alleges that Gregory deliberately selected a magistrate with documented personal and political opposition to the target of the warrant. Compl. ¶¶ 37-38. If that allegation is true, there was no independent intermediary in this case, and there is nothing to break.

Finally, a warrant does not insulate an officer whose application no reasonable officer would have submitted. *Malley v. Briggs*, 475 U.S. 335, 345 & n.9 (1986) ("The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.").

### C. The First Amendment retaliation claim states a claim, and *Gonzalez v. Trevino* forecloses Defendants' comparator argument.

The elements are settled: protected activity, an injury that would chill a person of ordinary firmness, and adverse action substantially motivated by the protected activity. *Keenan*, 290 F.3d at 258. Speech about the safety of a community's drinking water sits at the core of the First Amendment. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011); *Connick v. Myers*, 461 U.S. 138, 145 (1983). A felony charge

would chill a person of ordinary firmness. And the Complaint alleges motive not by reciting the legal standard but by quoting the Chief of Police, who published on the Department's official page that Mrs. Combs was "arrested for stating that our water was causing people to be hospitalized," and that saying so "is a state jail felony." Compl. ¶¶ 41-43. That is an official admission of the causal element. It is not, as Defendants say, an attempt to "announce the verdict, using the exact words of the legal test." Mot. 13.

Because the Complaint alleges the absence of probable cause, the *Nieves* rule does not apply at all. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019), bars a retaliatory arrest claim only where probable cause existed. Where it did not, "the *Mt. Healthy* test governs." *Id*. *Keenan* then supplies clearly established law directly: "If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of Tejeda and Martinez against the plaintiffs, then their retaliation violated clearly established law in this circuit." 290 F.3d at 262.

Even if probable cause were assumed, Defendants misstate the exception. They argue that the exception requires "objective evidence" of comparators and that Plaintiff "offers only an allegation of one other incident." Mot. 15. The Supreme Court rejected exactly that view in *Gonzalez v. Trevino*, 602 U.S. 653 (2024) (per curiam). The Fifth Circuit had "took an overly cramped view of *Nieves*" by demanding "very specific comparator evidence," and the Supreme Court held that

"the demand for virtually identical and identifiable comparators goes too far." *Id*. The "only express limit" on the evidence a plaintiff may present "is that it must be objective." *Id*. The Court further held that "the fact that no one has ever been arrested for engaging in a certain kind of conduct, especially when the criminal prohibition is longstanding and the conduct at issue is not novel, makes it more likely that an officer has declined to arrest someone for engaging in such conduct in the past." *Id*. Section 42.06 has been on the books since 1974. Plaintiff is aware of no reported instance of its application to a citizen's social media commentary about municipal utilities. That is the *Gonzalez* showing.

Beyond that, *Gonzalez* was decided on a summary judgment record and speaks of what a plaintiff must eventually "produce." Nothing in *Nieves* or *Gonzalez* requires a plaintiff to attach comparator evidence to a complaint.

**D. Villarreal does not control.**

Defendants cite *Villarreal v. City of Laredo*, 94 F.4th 374 (5th Cir. 2024) (en banc), for the proposition that arresting a journalist is not clearly established as unconstitutional. Mot. 9. Three things about that case defeat the analogy.

First, the reasoning Defendants invoke has been superseded. The Supreme Court vacated that judgment and remanded in light of *Gonzalez v. Trevino*. *Villarreal v. Alaniz*, 145 S. Ct. 368 (2024). On remand, the en banc court rested on a single, narrow, temporal ground: the events "occurred in 2017 and therefore predated the

Supreme Court's opinion in *Nieves v. Bartlett* by two years," so pre-*Nieves* law controlled. *Villarreal v. City of Laredo*, 134 F.4th 273 (5th Cir. 2025) (en banc). The court stated that its prior opinion was "superseded only to this extent." *Id*. The conduct here occurred in 2026, seven years after *Nieves* and two years after *Gonzalez* and *NRA v. Vullo*. The temporal holding of *Villarreal* simply does not reach it.

Second, the threshold premise of *Villarreal* was that "there was abundant evidence for a reasonable belief that Villarreal's conduct matched the elements of a section 39.06(c) violation." 94 F.4th at 380. Everything the court said afterward about officers relying on presumptively valid statutes followed from that premise. The rule that officers need not predict whether a statute is constitutional protects an officer who correctly applies a doubtful law. It does not protect an officer who misapplies a valid law to conduct outside its terms. That is not a constitutional prediction problem. It is a probable cause problem, and it is squarely within every officer's competence.

Third, neither *Villarreal* opinion adjudicated the *Nieves* exception. The 2024 opinion predated *Gonzalez*; the 2025 opinion expressly reserved the question by resting on the second qualified immunity prong. *Villarreal* is not authority on what a plaintiff must show to satisfy the exception.

**E. The right at issue was clearly established.**

Two propositions supply clearly established law here, and neither is close. The first is that an officer may not arrest a person without probable cause. That has been settled since long before 2026. *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975); *Malley*, 475 U.S. at 345. The second is that officials may not use their criminal enforcement power to punish protected speech. *Keenan*, 290 F.3d at 261 ("government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable"); *id*. at 262 n.7 (where officials are "substantially motivated to and did deter appellants' efforts to expose official misconduct," there is "no immunity shield for their obvious wrongdoing").

Defendants insist that Plaintiff must produce a case with materially identical facts. Mot. 7-9. The Supreme Court has repeatedly said otherwise. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances," and "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *accord Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam). No reasonable officer needed a prior case to know that he could not charge a journalist with a felony for accurately reporting that the town's water was making people sick, particularly when the town issued a boil water notice days later. And the Chief of Police announced the constitutional theory himself, publicly, in writing, on the Department's official page. Compl. ¶¶ 41-43.

Plaintiff further preserves, as pleaded in the Complaint, ¶¶ 58-62, the argument that qualified immunity lacks statutory foundation because the notwithstanding clause of the Civil Rights Act of 1871 displaced common law immunities and was omitted from the 1874 codification without substantive authority. *See Rogers v. Jarrett*, 63 F.4th 971, 974-78 (5th Cir. 2023) (Willett, J., concurring); Alexander A. Reinert, *Qualified Immunity and Federalism*, 111 Cal. L. Rev. 201 (2023). Plaintiff recognizes that this Court is bound by contrary precedent and raises the issue solely for preservation.

**F. The viewpoint discrimination and prior restraint claims survive.**

Defendants argue that the Chief's Facebook post was government speech and therefore unreviewable. Mot. 15-16. That inverts the doctrine. *Pleasant Grove City v. Summum, 555 U.S. 460 (2009), and Walker v. Texas Division, Sons of Confederate Veterans, Inc., 576 U.S. 200 (2015), concern what the government may choose to say* in its own voice and what it may decline to display on its own property. Neither authorizes the use of official power against a private speaker. *Walker* itself cautions that "a government's ability to express itself is [not] without restriction." 576 U.S. at 208. And the Supreme Court has warned that the government speech doctrine "is susceptible to dangerous misuse" and that courts "must exercise great caution before extending" it, precisely because otherwise "government could silence or muffle the expression of disfavored viewpoints." *Matal v. Tam*, 582 U.S. 218, 235 (2017).

The controlling line is drawn in *NRA v. Vullo*, 602 U.S. 175 (2024). A government official "can share her views freely and criticize particular beliefs.... What she cannot do, however, is use the power of the State to punish or suppress disfavored expression." *Id.* And "[a] government official cannot do indirectly what she is barred from doing directly." *Id*. If coercing a third party violated the First Amendment in *Vullo*, then charging the speaker herself with a felony, and announcing on an official government platform that her category of speech "is a state jail felony," is a violation several steps more direct. *See also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67-68 (1963) (courts "look through forms to the substance"; it "would be naive" to credit an official characterization of coercive communications).

Defendants' prior restraint argument fails for a related reason. Mot. 16-17. Whether the post satisfies the classical definition of a prior restraint is not the measure of the claim. Count II pleads viewpoint-based suppression and official coercion, and *Bantam Books* and *Vullo* govern that theory whether or not a formal order issued. In any event, the pleading is to be construed in Plaintiff's favor, and a claim is not dismissed because a defendant prefers a narrower label for it.

**G. Laird v. Tatum is inapposite. Mrs. Combs was arrested.**

Defendants argue that Plaintiff alleges only a subjective chill. Mot. 17. *Laird v. Tatum*, 408 U.S. 1 (1972), held that "[a]llegations of a subjective 'chill' are not an

adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id*. at 13-14. The plaintiffs in *Laird* had been subjected to nothing at all; they challenged the existence of a data-gathering program. Mrs. Combs was investigated, charged with a state jail felony, arrested, and publicly branded a criminal by her city's police department. That is specific present objective harm in its most literal form. Laird names the two things that suffice, and the Complaint pleads both. *See also Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) (objective chill is injury in fact and does not require past enforcement); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014) ("an actual arrest, prosecution, or other enforcement action is not a prerequisite").

**H. Chief Gregory's personal involvement is pleaded. This is not respondeat superior.**

Defendants argue that Gregory cannot be liable because he was not personally involved in the arrest. Mot. 13. The Complaint alleges that he directed Beckham to investigate and charge Mrs. Combs, Compl. ¶ 28; that he personally bypassed the City's municipal judge and selected a compromised magistrate, id. ¶¶ 36-38; that he authored or authorized the official post declaring her journalism a felony, id. ¶¶ 40-43; and that he simultaneously worked to remove the judge who would not cooperate, id. ¶¶ 39, 51. A supervisor is liable where he "affirmatively participate[d] in the acts causing the constitutional deprivation." *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). Ordering the investigation, choosing the magistrate,

and publishing the threat are affirmative participation. Nothing about the claim depends on vicarious liability.

Defendants' own motion answers their argument. In the course of denying that Gregory was personally involved, the motion acknowledges that the Complaint alleges Gregory directed Beckham to investigate Mrs. Combs and to pursue criminal charges against her. Mot. 13. That acknowledgment concedes the only thing Plaintiff must plead. A supervisor who directs a subordinate to investigate and charge a named person is not a bystander to the arrest that follows. He is its author.

*Respondeat superior* describes liability imposed on a supervisor because of the position he holds. Nothing in this claim depends on the position Gregory holds. It depends on what he is alleged to have done: to have ordered the investigation, to have chosen the magistrate, to have published the official statement that reporting of this kind is a felony, and to have worked to remove the judge who would not cooperate. Compl. ¶¶ 28, 36-43, 51. Defendants cannot in the same breath acknowledge that Gregory is alleged to have directed the prosecution and maintain that he had no involvement in it. If the allegation is false, that is a matter for summary judgment. On this motion it is true.

**I. Councilwoman Bannister's personal involvement is pleaded.**

Defendants say the Complaint is "devoid of any identifiable action attributable to Ms. Bannister." Mot. 14. It is not. The Complaint alleges that

Bannister harbored documented personal and political animus toward Mrs. Combs arising from her journalism, Compl. ¶¶ 45, 16; that she knew of the water contamination through her son's position on the Economic Development Board and his on-the-record admission that the supply contains asbestos and lead contaminants, id. ¶¶ 18-19, 46; that she conspired with Gregory to manufacture the charges in order to suppress that reporting, id. ¶ 47; that she instigated and provided political authorization for the prosecution, id. ¶ 81(c); and that she is presently working to constructively terminate the municipal judge who refused to sign such warrants, id. ¶ 51. Whether those allegations can be proved is not the question. Pleaded, they describe a participant, not a bystander.

Defendants' answer to those allegations is that Plaintiff "actually documents nothing." Mot. 14. The objection is not that the Complaint fails to say what Bannister did. It is that the Complaint does not attach proof that she did it. Documentation is not a pleading requirement. The Complaint identifies Bannister by name, states the office she holds, states her motive, states the source of her knowledge of the contamination, states what she is alleged to have agreed to, states what she is alleged to have done, and states the position she used to do it. Compl. ¶¶ 16, 18-19, 45-47, 51, 81(c), 82. A pleading that answers who, what, when, why, and how has done what Rule 8 asks of it. What Defendants want is an exhibit, and exhibits are the product of discovery.

The Complaint also draws the line between Bannister and a bystander. A councilmember who is alleged to have known of the contamination through her family, to have harbored documented animus toward the journalist reporting on it, to have agreed with the Chief of Police that the journalist should be charged, to have supplied the political authorization for that charge, and to be working now to remove the municipal judge who refused to sign such warrants is not alleged to have disapproved of Mrs. Combs' reporting. She is alleged to have used her office to stop it. Id. ¶¶ 18-19, 45-47, 51, 81(c).

To the extent the Court concludes that any of these allegations should be stated with greater specificity, the remedy is repleading rather than dismissal. Plaintiff is contemporaneously seeking leave to amend to plead the allegations concerning Councilwoman Bannister in greater detail should the Court conclude that greater specificity is required.

**J. The conspiracy claims state a claim.**

***1. The intracorporate conspiracy doctrine does not bar the Section 1983 claim.***

Defendants assert flatly that "a governmental entity cannot conspire with itself." Mot. 4. The Fifth Circuit authority they cite, *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994), and *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), applied the doctrine to § 1985(3) claims. Neither addressed § 1983. The Supreme Court has expressly declined to bless the doctrine even in the § 1985

context, noting a division among the circuits and stating that nothing in its opinion "should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application." *Ziglar v. Abbasi*, 582 U.S. 120, 153-54 (2017). The Fifth Circuit's most recent treatment likewise arose under § 1985(3). *Konan v. U.S. Postal Serv.*, 96 F.4th 799, 805 (5th Cir. 2024). Courts in this state have declined to extend the doctrine to § 1983. *See, e.g., Watsky v. Williamson County*, No. 1:21-CV-374-RP (W.D. Tex. July 15, 2024). Dismissal with prejudice on an unsettled question of law, at the pleading stage, is not warranted.

***2. The personal purposes exception applies.***

Even where the doctrine applies, "[a] possible exception to the intracorporate conspiracy doctrine exists where corporate employees act for their own personal purposes." *Benningfield*, 157 F.3d at 376. The Complaint pleads exactly that. Bannister is alleged to have acted from personal animus toward a journalist who criticized her, and from a familial interest in suppressing reporting that implicated her son's public statements about asbestos in the City's water. Compl. ¶¶ 45-46, 82. Gregory is alleged to have acted to suppress reporting critical of him personally. Id. ¶¶ 15-16, 30. Defendants cannot have it both ways. If these officials acted for the City, the City is liable under *Monell*. If they acted for themselves, the intracorporate doctrine does not apply.

***3. An agreement and overt acts are pleaded.***

A Section 1983 conspiracy requires an agreement to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Paragraph 81 of the Complaint sets out the overt acts of each Defendant separately: Gregory directed the investigation, circumvented the municipal judge, selected a compromised magistrate, and published the official threat; Beckham conducted the investigation and submitted materials in support of the warrant application while admittedly ignorant of First Amendment law; Bannister instigated the prosecution, leveraged her Council position, and worked to remove the judge who refused to participate. Compl. ¶ 81(a)-(c). Defendants say those acts are unspecified as to "what those acts were, when they were taken, and how they furthered the conspiracy." Mot. 19. The Complaint answers each question. What more could be alleged without discovery of the Defendants' own communications is not apparent.

***4. The Section 1985(3) claim is pleaded and preserved.***

Plaintiff alleges that Defendants conspired against her as a member of a class of persons who publicly challenge official misconduct. Compl. ¶ 83. Plaintiff acknowledges candidly that Fifth Circuit precedent has read § 1985(3) to require racial animus. *Newberry v. E. Tex. State Univ*., 161 F.3d 276, 281 n.2 (5th Cir. 1998). Plaintiff preserves the contrary argument: Newberry itself acknowledges that the Supreme Court "has never held that nonracial animus is [in]sufficient," id.; Griffin

reserved the question, Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); and see United Bhd. of Carpenters v. Scott, 463 U.S. 825, 836 (1983) ("a close question"). The Fifth Circuit's en banc precedent has described a class based on "political beliefs or associations" as "the kind of class envisioned by the framers of the Ku Klux Klan Act." *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346-47 (5th Cir. 1981) (en banc). Should the Court dismiss the § 1985(3) count, the § 1983 conspiracy claim, which has no class-based animus element, is unaffected.

**K. The municipal liability claim requires no pattern, because the actor was the City's final policymaker.**

Defendants' entire argument under Monell v. Department of Social Services, 436 U.S. 658 (1978), rests on the contention that "three disparate events" cannot establish "a persistent, widespread practice." Mot. 20-21. That argument answers a theory Plaintiff pleads in the alternative while ignoring the theory she pleads first.

***1. A single act of a final policymaker is official policy.***

Official policy takes two forms in this circuit: a policy adopted by the municipality's lawmaking officers or by an official to whom policymaking authority has been delegated, or a persistent, widespread practice constituting custom. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). The pattern requirement appears only in the second. The Fifth Circuit has stated the rule in a single sentence: "A pattern of conduct is necessary only where the municipal actors are not policymakers. Alternatively, it may be shown that a final policymaker took

a single unconstitutional action." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). The Supreme Court held the same in *Pembaur*: "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Where "a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

Defendants' pattern cases are all custom or failure to train cases. *Connick v. Thompson, 563 U.S. 51, 62 (2011), says a pattern is "ordinarily necessary" to show deliberate indifference "for purposes of failure to train." The remaining authorities Defendants cite concern widespread practice. Mot. 20-21*. None speaks to the final policymaker theory.

***2. Gregory is alleged to be the City's final policymaker for law enforcement.***

The Complaint alleges that Gregory is the Chief of Police and "the senior policymaker for that department," and a former City Administrator. Compl. ¶¶ 10, 57, 99. It alleges that his decisions to investigate and charge Mrs. Combs, to publish official governmental threats on the Department's page, and to arrest a citizen for holding a protest sign "constitute the official policy of the City of Trinidad." Id. ¶ 99. In *Zarnow* the Fifth Circuit held a chief of police was the final policymaker

where he was "the sole official responsible for internal police policy" and the City had "impliedly delegated its policymaking authority" to him. 614 F.3d at 168. Whether that is so here depends on the City's charter, ordinances, general orders, and actual practice, none of which is before the Court.

That is dispositive of this motion for two independent reasons. First, "the specific identity of the policymaker is a legal question that need not be pled"; the complaint "need only allege facts that show an official policy, promulgated or ratified by the policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). Second, who holds final policymaking authority "is a question of state law" for the judge, resolved by examining "state and local positive law, as well as 'custom or usage' having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). It cannot be resolved on a motion that has put no local law before the Court.

***3. The failure to train theory survives independently.***

A pattern is not required where the risk of constitutional violations "was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018); *see City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989). *Littell* reversed a Rule 12(b)(6) dismissal where the plaintiffs alleged a complete failure to train employees "concerning a clear constitutional duty implicated in recurrent

situations." 894 F.3d at 624-26. The Complaint alleges precisely that: that the lead investigator admitted the Department has not provided First Amendment training in several years and that First Amendment principles played no role in his decision-making. Compl. ¶¶ 33, 35, 101. Police officers investigating statutes that reach speech will confront the First Amendment as certainly as officers with firearms will confront fleeing suspects. The causal connection here is not inferred; it is admitted by the officer who conducted the investigation.

***4. Ratification.***

Defendants argue that ratification requires an "extreme factual situation" comparable to officers killing an innocent passenger. Mot. 23. *Grandstaff* itself upheld liability where "[n]o incidents prior to August 11, 1981 were proved," and inferred the policymaker's disposition "from his conduct after the events of that night," including that "there were no reprimands, no discharges, and no admissions of error." *Grandstaff v. City of Borger*, 767 F.2d 161, 168-69 (5th Cir. 1985). In any event, ratification is pleaded in the alternative. Where the policymaker is himself the actor, his act is the policy, and ratification is beside the point.

***5. In the alternative, the pattern allegations suffice, and any deficiency is curable.***

The pattern theory is pleaded in the alternative, and for the reasons given above the Court need not reach it. If it does, Defendants' objection is not that the

Complaint alleges no prior incidents. It is that the incidents alleged are too few and too unlike one another. Mot. 20-21. Neither objection states a rule of pleading.

The Fifth Circuit has fixed no minimum number of incidents that a complaint must allege. Whether prior incidents are sufficiently numerous and sufficiently similar to establish a custom is a fact-bound inquiry ordinarily resolved on a record, and the Fifth Circuit has reversed Rule 12(b)(6) dismissals of municipal liability claims for that reason. *Littell*, 894 F.3d at 624-26; *see Groden*, 826 F.3d at 284-85. At the pleading stage the question is whether the incidents alleged, taken as true and read in Plaintiff's favor, make the practice she describes plausible.

Defendants' second objection, that the incidents are too dissimilar, is likewise an argument about weight. Similarity is measured against the practice alleged, not against one another in the abstract. The practice alleged here is the use of the City's law enforcement authority against residents who criticize or oppose City officials. Incidents that differ in their particulars may be identical in that respect, and a custom of retaliation is not disproved by showing that the officials found different pretexts on different occasions.

In any event, if the Court concludes that the pattern is thinly pleaded, the remedy is leave to amend rather than dismissal. Plaintiff has filed one pleading, no discovery has been taken, and the City's own records are the principal source of the evidence a pattern theory requires. *Wicks*, 41 F.3d at 996. Plaintiff is

contemporaneously seeking leave to amend to plead additional incidents bearing on the City's practice, if the court determines a deficiency here exists in the pleading.

**L. The claims for declaratory and injunctive relief are properly pleaded.**

Defendants argue that there is "no ongoing conduct" because Plaintiff pleads "a single arrest." Mot. 24-26. Three answers.

First, the statute remains on the books, the individual Defendants remain in their offices, and the official governmental pronouncement that reporting on the City's water "is a state jail felony" has never been retracted. Compl. ¶¶ 43, 75. Mrs. Combs is a working journalist who intends to continue reporting on the same subject. A credible threat of enforcement is an injury in fact, and "an actual arrest, prosecution, or other enforcement action is not a prerequisite." *Susan B. Anthony List*, 573 U.S. at 158-59; Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979); Speech First, 979 F.3d 319. Mrs. Combs has been arrested and charged. She has more than the law requires.

Second, to the extent Defendants rely on the disposition of the criminal charge, the voluntary cessation doctrine applies. A defendant's cessation of challenged conduct does not moot a claim unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," and the "heavy burden" lies with the party asserting mootness. *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000). Defendants have not disclaimed future enforcement against the same speech.

Third, Younger abstention has no application. Younger v. Harris, 401 U.S. 37 (1971), requires an ongoing state criminal proceeding, and the doctrine is confined to three exceptional categories that "define *Younger's* scope." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78, 81 (2013). Where no prosecution is pending, "considerations of equity, comity, and federalism ... have little vitality: federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974). Declaratory relief must be assessed independently of injunctive relief. *Id*. at 462-63.

Plaintiff acknowledges that the request in Count VII for an order dismissing the criminal charge, Compl. ¶ 111(a), has been overtaken by events and does not press it. The remaining requests, which are prospective and directed at the Defendants' continuing conduct, are properly before the Court.

## V. DISMISSAL WITH PREJUDICE IS NOT THE APPROPRIATE DISPOSITION

If the Court concludes that any count is inadequately pleaded, dismissal with prejudice is not the remedy. Plaintiff has filed one pleading and has not previously amended. "Where the plaintiff has filed only one pleading ... immediate dismissal ordinarily is not justified." *Wicks*, 41 F.3d at 996. Leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2). If the Court finds any count deficient, the appropriate

disposition is dismissal without prejudice with leave to replead and, as to any qualified immunity deficiency, an order directing a reply under Rule 7(a) rather than dismissal. Schultea, 47 F.3d 1427. Plaintiff does not seek affirmative relief by this response. She seeks leave by the separate motion described below.

Plaintiff is contemporaneously filing a Motion for Leave to File a First Amended Complaint. The proposed amendment pleads additional facts concerning the warrant application and the magistrate's deliberations that have come to light since the original filing of this cause, states the allegations concerning Councilwoman Bannister with greater specificity, pleads additional incidents bearing on the City's practice, pleads the prosecutor's refusal to pursue the charge and the grand jury's refusal to indict, the change in personnel as a result of the fallout of this cause, and withdraws the request for relief in Count VII(a) that has been overtaken by events. That motion is directed to the Court's discretion and is not a concession that the present pleading is deficient. This case is at the pleadings. No scheduling order has issued, no discovery has been taken, and Defendants can identify no prejudice from an amendment offered with Plaintiff's first response to a motion to dismiss. Leave should be freely given. Fed. R. Civ. P. 15(a)(2).

## VI. CONCLUSION

Defendants have moved to dismiss a complaint that alleges, with names, dates, and quotations, that a police chief had a journalist charged with a felony for

accurately reporting that the city's water was making people sick, that he shopped the warrant to a magistrate he knew was hostile to her, that he announced on his department's official page that such reporting is a felony, and that a councilwoman with a family stake in the water system instigated the whole thing. The motion answers none of that. On the second prong of qualified immunity, where the governing law is supposed to be identified, it briefs a statute that has nothing to do with this case. It asks instead for evidence, comparators, documentation, and proof, none of which Rule 8 requires and none of which can be obtained before discovery. A police officer cannot arrest a citizen without probable cause. Nothing in this motion identifies a defect in the pleading; it identifies only a preference for delay.

WHEREFORE, Plaintiff Jennifer Lynn Combs respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety; alternatively, that any dismissal be without prejudice and with leave to amend; and that the Court grant Plaintiff such other and further relief to which she may be justly entitled.

Respectfully submitted,

GFA LAW, PLLC

/s/ CJ Grisham
**CJ Grisham**
State Bar No. 24124533
cj@gfalaw.us

Ryan Franceschina
State Bar No. 24151119
ryan@gfalaw.us

3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76502
Telephone: 254-405-1726

**ATTORNEYS FOR PLAINTIFF JENNIFER LYNN COMBS**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF electronic filing system.

/s/ CJ Grisham
**CJ Grisham**