**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **JENNIFER LYNN COMBS,**<br><br>Plaintiff,<br><br>v.<br><br>**CHARLES W. GREGORY, individually and in his official capacity as Chief of Police of the City of Trinidad, Texas; CAMERON BECKHAM, individually and in his official capacity as Officer, Trinidad Police Department; MARIE BANNISTER, individually and in her official capacity as City Councilwoman, City of Trinidad, Texas; and THE CITY OF TRINIDAD, TEXAS,**<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 6:26-CV-00235-JDL-JCB** |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. (Doc. No. 13.) Plaintiff has filed a response in opposition, (Doc. No. 16), to which Defendants have filed a reply, (Doc. No. 21.) For the reasons stated herein, the Court **RECOMMENDS** that Defendants' motion to dismiss (Doc. No. 13) be **GRANTED** as follows: (1) Counts I, II, III, and IV should be **DISMISSED** without prejudice because Defendants Bannister, Beckham, and Gregory are entitled to qualified immunity, (2) Counts V, VI, and VII should be **DISMISSED** without prejudice for failure to state a claim. The Court **FURTHER RECOMMENDS** that Plaintiff be granted leave to amend her complaint.

## BACKGROUND

Plaintiff—a journalist based in Navarro County, Texas—initiated this action under 42 U.S.C. §§ 1983 and 1985(3) on May 19, 2026. (Doc. No. 1.) Plaintiff alleges that, on an unspecified date, she received "credible reports from members of the community" that the drinking water in Trinidad, Texas was unsafe. *Id.* at 10. In response to these reports, Plaintiff "published a post on Facebook" to alert the community to the potential hazard. *Id.* On a later unspecified date, the City issued a "boil water notice," implying that the drinking water was indeed unsafe. *Id.* at 11–12. Thereafter, Defendant Charles W. Gregory, Trinidad's Chief of Police ("Defendant" or "Gregory"), directed Defendant Cameron Beckham, a Trinidad police official ("Defendant" or "Beckham"), to investigate Plaintiff, secure a warrant, and charge her with a violation of Texas Penal Code § 42.06, a statute which criminalizes initiating false emergency reports. *Id.* at 12. The Trinidad Police Department later posted on its official Facebook page that Plaintiff was "arrested for stating that [the City's] water was causing people to be hospitalized due to bacteria . . . Which was false and caused a panic and alarm to the public." *Id.* at 16. The post admonished the public that false reports could give rise to "a state jail felony." *Id.*

Plaintiff claims that the arrest and charge constituted "deliberate political retaliation." *Id.* at 13. Plaintiff, as a journalist, has been openly critical of Defendants Gregory and Marie Bannister, a Trinidad City Councilwoman ("Defendant" or "Bannister"). *Id.* According to Plaintiff, Defendants used her water safety post as a pretext to charge her criminally—and thus punish her—for her past criticism of City officials. *Id.*

Plaintiff asserts the following claims: (1) § 1983 against Defendants Gregory and Beckham for a retaliatory prosecution which chilled Plaintiff's speech in violation of the First Amendment, *id.* at 23–25, (2) § 1983 against Defendants Gregory, Beckham, and Bannister for engaging in

viewpoint discrimination and establishing a prior restraint on speech, *id.* at 25–27, (3) § 1983 against Defendants Gregory and Beckham for an alleged false arrest and seizure in violation of the Fourth Amendment, *id.* at 29–33, (4) § 1983 against Defendants Gregory, Beckham, and Bannister for jointly conspiring to deprive Plaintiff of one or more constitutional rights, *id.* at 27–29, (5) §1985(3) against Defendants Gregory, Beckham, and Bannister for jointly conspiring to deprive Plaintiff of her equal protection rights, *id.*, and (6) § 1983 municipal liability against the City of Trinidad, *id.* at 33–36. Plaintiff seeks compensatory and punitive damages in addition to injunctive and declaratory relief. *Id.* at 41–42.

**LEGAL STANDARD**

A Rule 12(b)(6) motion does not "test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Instead, Rule 12(b)(6) tests whether a complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). But the Court does not assume the truth of "conclusory allegations, unwarranted factual inferences, or legal conclusions." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009)). Ultimately, if the plaintiff "fails to allege any set of facts in support of his claim which would entitle him to relief," dismissal is proper. *Villareal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

## DISCUSSION

In their motion to dismiss, Defendants argue that: (1) Defendants Gregory, Beckham, and Bannister are entitled to qualified immunity because Plaintiff has not stated a *prima facie* federal rights violation against any of them and because—even if she had—Defendants did not violate clearly established law, (Doc. No. 13, at 9–17), (2) Plaintiff's § 1985(3) civil conspiracy claim fails because she has not alleged racial animus and because of the intra-corporate conspiracy doctrine, *id.* at 17–19, (3) Plaintiff's § 1983 conspiracy claim fails because she has not alleged a separate, actionable violation of § 1983, fails to adequately plead an agreement, and fails to overcome the intra-corporate conspiracy doctrine, (Doc. No. 21, at 11–12), and (4) Plaintiff's municipal liability claim fails because she cannot establish "a constitutional violation by a municipal actor," *id.* at 20.

In response, Plaintiff argues that (1) Defendants are not entitled to qualified immunity, (Doc. No. 16, at 13–31), (2) Plaintiff adequately pleaded her conspiracy claims, *id.* at 33–35, and that (3) Plaintiff adequately pleaded her municipal liability claim, *id.* at 36–39. In the alternative, Plaintiff requests leave to amend any defects. *Id.* at 42.

Defendants' reply urges substantially the same arguments as Defendants' motion. (Doc. No. 21.) Defendants maintain that Plaintiff cannot overcome even the first step of qualified immunity because she has not pleaded an actionable constitutional violation against any of them. *Id.* at 2–12. Defendants argue that municipal liability fails without any individual violation by a municipal actor. *Id.* at 12–14. Lastly, Defendants insist that leave to amend would be futile. *Id.* at 14.

**I. Qualified Immunity**

To survive Rule 12(b)(6) dismissal based on qualified immunity, the plaintiff must plausibly allege two things: (1) first, that persons acting under color of state law violated one or more of her federal rights, and (2) second, that such rights were "clearly established" at the time the violations occurred. *See Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Where the plaintiff fails to plead a *prima facie* federal rights violation, the Court need not proceed to the second prong of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs . . . should be addressed first."); *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) ("[Courts] can decide one question or both.").

**i. Defendant Beckham**

Plaintiff alleges that Defendant Beckham conducted the investigation, solicited the warrant, and ultimately arrested her. (Doc. No. 1, at 30.) As such, Plaintiff asserted the following individual claims against Beckham: (1) unlawful arrest in violation of the Fourth Amendment, *id.* at 29–33, and (2) retaliatory prosecution in violation of the First Amendment, *id.* at 23–27. Plaintiff also appears to assert a separate First Amendment violation against Beckham arising from a combination of the retaliatory prosecution and the City's Facebook post, which Plaintiff claims was a speech-chilling viewpoint-discriminatory prior restraint. *Id.* at 25–27.

Defendants argue that Beckham is entitled to qualified immunity for any claim arising from Plaintiff's arrest or the subject Facebook post. Specifically, Defendants urge that (1) Plaintiff's Fourth Amendment unlawful arrest and First Amendment retaliatory prosecution claims depend

on the lack of probable cause, (2) Plaintiff's arrest was supported by probable cause, (3) alternatively, Plaintiff's arrest was authorized by a warrant, which triggers the independent intermediary doctrine and shields Beckham from liability, (4) the narrow *Nieves* exception does not apply, and (5) therefore, Plaintiff fails at the first prong of qualified immunity. (Doc. No. 13, at 9–15.) Further, Defendants argue that Plaintiff has not stated a valid prior restraint or viewpoint discrimination claim. *Id.* at 15–17.

Fourth Amendment: Unlawful Arrest

When police obtain a warrant from a non-biased judicial officer before executing an arrest, the "independent intermediary doctrine" is triggered. *Sessanga v. City of DeSoto*, No. 24-11050, 2025 U.S. App. LEXIS 26218, at *3–4 (5th Cir. Oct. 8, 2025). The doctrine generally shields government officials from Fourth Amendment liability for an arrest, even if police objectively lacked probable cause. *See id.*; *Trevino v. Iden*, 79 F.4th 524, 531 (5th Cir. 2023) ("[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation . . . insulating the initiating party.") (quoting *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022)); *United States v. Leon*, 468 U.S. 897, 922 (1984) ("[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.") (internal quotation marks omitted) (citation omitted).

There are three exceptions to the independent intermediary doctrine. The first requires Plaintiff to show that (1) "the affiant, in support of the warrant, include[d] a false statement knowingly and intentionally, or with reckless disregard for the truth," and (2) "the allegedly false statement [was] necessary to the [judge's] finding of probable cause." *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). The second

exception requires Plaintiff to show that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). The third exception requires Plaintiff to show that the judge who issued the warrant "did not manifest the neutrality and detachment demanded of a judicial officer when presented with a warrant application." *Lo-Ji Sales v. New York*, 442 U.S. 319, 326 (1979).

Plaintiff fails to meet the first exception to the independent intermediary doctrine. Plaintiff does not allege that Beckham knowingly or recklessly made false statements in the subject warrant application. Instead, Plaintiff alleges that a boil water notice was issued and that citizens reported hospitalizations on City social media websites. (Doc. No. 1, at 25–27.) Plaintiff argues that Beckham knowingly or recklessly "omitted" these facts from the warrant, thus misleading the judge. (Doc. No. 16, at 21.) But Plaintiff does not specify when the boil water notice was issued, or when the citizen reports were submitted. If the Court cannot ascertain when these events occurred, it cannot determine whether Beckham could or should have known about them at the time he submitted the warrant application. Therefore, the Court cannot say that Beckham knowingly or recklessly withheld these facts from the judge. The Court reserves judgment on whether the alleged omissions would have been material.

Plaintiff also fails to meet the second exception to the independent intermediary doctrine. Upon review of the supporting affidavit,[1] the Court cannot conclude that the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely

---

[1] The Court may consider the warrant and affidavit as if they were set forth in Plaintiff's complaint. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("When a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents.") (citations omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) ("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

unreasonable." *Leon*, 468 U.S. at 923 (citation omitted). The affidavit details a variety of facts suggesting that Plaintiff may have violated Texas Penal Code § 42.06 by knowingly or recklessly initiating a false emergency report. Most notably, the affidavit (1) identifies Plaintiff, (2) explains her Facebook post which claimed that the City's water was unsafe, (3) includes the date and time Plaintiff made the post, and (4) contains statements from the City's own "public works / utility director" which manifestly contradict the post. (Doc. No. 22, at 3–6.) The affidavit also notes that the City's public works director began receiving frantic calls from residents who—after seeing Plaintiff's post—feared that they might be hospitalized from drinking the City's water. *Id.* Taken together, these facts provided the judge with at least an "indicia of probable cause" that Plaintiff knowingly or recklessly initiated a false report about the City's water quality. *Leon*, 468 U.S. at 923 (citation omitted); *see Jordan v. Brumfield*, 687 F. App'x 408, 414 (5th Cir. 2017) (belief in affidavit not unreasonable because it identified "the source of information relied upon," the dates the offense conduct occurred and the specific acts performed).

Lastly, Plaintiff does not meet the third exception to the independent intermediary doctrine. This exception imposes a high bar and is almost never successfully invoked. Plaintiff must plead facts suggesting that the judge who issued the warrant had "wholly abandoned" his judicial role. *Leon*, 468 U.S. 897 at 923. Such abandonment may occur where a judge acts as "an adjunct law enforcement officer" by leading the police in their search, *Lo-Ji Sales*, 442 U.S. at 326–27, or where a judge's salary depends on how many warrants he issues, *Connally v. Georgia*, 429 U.S. 245, 246–51 (1977), or where a judge simultaneously holds the office of State Attorney General, *Coolidge v. N.H.*, 403 U.S. 443, 450 (1971). Here, in contrast, Plaintiff baldly and vaguely asserts that the judge who issued her arrest warrant had political and personal disagreements with her.

(Doc. No. 1, at 15, 28, 32.) These allegations do not come close to demonstrating that the judge had "wholly abandoned" his judicial role.

Since Plaintiff meets none of the independent intermediary doctrine's exceptions, her arrest did not constitute an actionable Fourth Amendment violation. Therefore, Plaintiff's § 1983 unlawful arrest claim fails, and Beckham is entitled to qualified immunity.

First Amendment: Retaliatory Prosecution

Plaintiff's retaliatory prosecution claim fails for the same reasons as her Fourth Amendment claim. The independent intermediary doctrine also applies to First Amendment retaliatory prosecution claims. *Trevino v. Iden*, 79 F.4 524, 531 (5th Cir. 2023). And per the above, Plaintiff meets none of the doctrine's exceptions. Therefore, the warrant authorizing her arrest prevents Plaintiff from stating a valid First Amendment retaliatory prosecution claim against Beckham. Plaintiff thus cannot overcome the first prong of qualified immunity for this claim, and Beckham is likewise entitled to qualified immunity.

While the analysis would normally end here—the parties also argued about the *Nieves* exception in their briefs—so the Court will address it. The *Nieves* exception is incredibly "narrow." *Miller v. Salvaggio*, No. 23-50894, 2024 U.S. App. LEXIS 31833, at *20 (5th Cir. Dec. 16, 2024). It allows a First Amendment retaliatory arrest or prosecution claim to proceed despite the existence of probable cause and/or a warrant. *Id.* To successfully invoke the exception, Plaintiff must "present[] objective evidence that [she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech" were not arrested. *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019). For example, jaywalking is "endemic but rarely results in arrest." *Id.* If a vocal critic of the police is arrested for jaywalking at an intersection where jaywalking prohibitions are

never enforced, the *Nieves* exception might apply. *Id.* The operative implication under such circumstances is that the individual was arrested for their criticism of government, not because they committed the offense of jaywalking. Therefore, probable cause and/or a warrant do "little to prove or disprove the causal connection between animus and injury." *Id.*

Here, Plaintiff fails to meet the *Nieves* exception because she has not pleaded a sufficient history of Texas Penal Code § 42.06's non-enforcement by the City of Trinidad. To meet the exception, Plaintiff would need to plead—at a minimum—that similarly situated individuals in Trinidad, Texas initiated false emergency reports but were not arrested under § 42.06. The operative implication would be that Plaintiff was arrested for her criticism of local City officials, not because she initiated a false report. In *Gonzales*, the plaintiff satisfied the exception by compiling "the past decade's misdemeanor and felony data for Bexar County" which showed that a particular statute "had *never* been used" to charge any individual for what Plaintiff had done. 602 U.S. 653, 657 (2024) (emphasis added). In contrast, Plaintiff merely pleads that Defendant Gregory did not care about obeying the Constitution and arrested a man for holding a vulgar sign outside the "Trinidad Police Department HQ." (Doc. No. 1, at 6.) Those allegations are irrelevant to *Nieves* because the exception does not concern the "motivations of the particular arresting officer." *Miller*, 2024 U.S. App. LEXIS 31833, at *23 (quoting *Nieves*, 587 U.S. at 407)).

Plaintiff fails to meet the first prong of qualified immunity for her First Amendment retaliatory prosecution claim against Beckham. None of the intermediary doctrine's exceptions apply. Nor does the *Nieves* exception apply. Therefore, the warrant authorizing Plaintiff's arrest defeats this claim. Beckham is entitled to qualified immunity.

First Amendment: Prior Restraint, Viewpoint Discrimination, Chilling Effect

As an initial matter, the Court attempts to clarify precisely what Plaintiff alleges under this claim (Count II), because Plaintiff mixes together a variety of injuries and theories. Plaintiff first alleges that the City's Facebook post—which warned the Trinidad community not to violate Texas Penal Code § 42.06—effected unconstitutional viewpoint discrimination. (Doc. No. 1, at 25–26.) Next, Plaintiff appears to allege that the combination of her retaliatory prosecution and the City's Facebook post constituted an unlawful prior restraint which has chilled her speech. *Id.* at 26.

As to viewpoint discrimination, Beckham is entitled to qualified immunity due to the government speech doctrine. Federal courts have long recognized that the First Amendment does not bar the government from stating an opinion. *Shurtleff v. City of Boston*, 596 U.S. 243, 251 (2022) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–469 (2009)). Rather, when the government speaks, it may openly favor one opinion over the other and thus discriminate based on viewpoint. *See, e.g.*, *Summum*, 555 U.S. at 470–74 (city's decision to openly display Ten Commandments monument rather than monument to alternative religion immune from viewpoint discrimination scrutiny); *Little v. Llano Cty.*, 138 F.4 834, 860–61 (5th Cir. 2025) (public library's "choice of the books on its shelves is government speech" and thus, library may discriminate based on viewpoint). Plaintiff admits that Defendant Gregory—Trinidad's Chief of Police—communicated via the City's official Facebook page and controlled the substance of the post. She also explicitly calls the post an "official governmental declaration." (Doc. No. 1, at 26.) Plaintiff thus defeats her own viewpoint discrimination claim by admitting that the Facebook post was government speech. *See Shurtleff*, 596 U.S. at 252 (finding of government speech depends on "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or

controlled the expression") (citing *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 209–14 (2015)).

Further—and perhaps more importantly—Plaintiff's viewpoint discrimination claim against Beckham fails because she has not established his personal involvement in the City's Facebook post. In § 1983 suits, the plaintiff must "specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 n. 7 (5th Cir. 1992); *see Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976)). Yet here, Plaintiff offers no facts to suggest that Beckham played any role in the City's Facebook post. Plaintiff instead attributes the post to Defendant Gregory. (Doc. No. 1, at 16, 25, 28, 34.) For these reasons also, Beckham is entitled to qualified immunity.

Next, the Court addresses Plaintiff's prior restraint claim. Prior restraints are "administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). Statutes authorizing such orders will typically be invalidated unless "the government can establish that the 'activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest.'" *United States v. Brown*, 250 F.3d 907, 915 (5th Cir. 2001) (citation omitted); *see, e.g.*, *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 556–60 (1976) (surveying cases). A punishment imposed on speech after the fact of its making is, by definition, not a *prior* restraint. *See Alexander*, 509 U.S. at 553–54 ("[O]ur decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments."); *Serafine v. Branaman*, 810 F.3d 354, 370 (5th Cir. 2016) ("There is a clear distinction, solidly grounded in our cases, between prior restraints and subsequent punishments.") (internal quotation

marks omitted) (quoting *Gibson v. Tex. Dep't of Ins. Div. of Workers' Comp.*, 700 F.3d 227, 235 (5th Cir. 2012)).

The City's Facebook post cannot be a prior restraint as a matter of law. The post was not an order with any binding legal effect. *See Neb. Press Ass'n*, 427 U.S. at 559 ("A prior restraint . . . has an immediate and irreversible sanction."). Rather, the post merely alerted the Trinidad community that false emergency reports were circulating and warned that initiating such reports could result in prosecution. (Doc. Nos. 1, at 16, 25, 28; 22, at 3–4.) The post was even labeled "Water Quality around 1400 hours," appearing more like a "public information notice" than any sort of judicial or administrative order. (Doc. No. 22, at 3.) Further—as explained above—Beckham's lack of personal involvement in the Facebook post also defeats this prior restraint theory.

Likewise, the alleged retaliatory prosecution cannot constitute a prior restraint. Plaintiff's arrest was a subsequent punishment for speech already made, not a *prior* restraint on speech that might otherwise occur in the future. Therefore, as a matter of law, she fails to state a prior restraint claim against Beckham under this theory as well.

Thus—to the extent Plaintiff claims that these alleged prior restraints caused a chilling effect injury—that injury is not actionable. Plaintiff fails to state a prior restraint claim against Beckham, so qualified immunity attaches, and he cannot be liable for any alleged resulting chill.

The Court will also address whether Plaintiff has stated a valid chilling effect claim separate from the propriety of her prior restraint claims. In other words: The Court asks whether the alleged retaliatory prosecution or the City's Facebook post can support a chilling effect claim notwithstanding that neither constitutes a prior restraint. The answer is no. Beckham lacks personal

involvement in the Facebook post, so Plaintiff fails to state a § 1983 claim against him on any theory which traces injury to the post. Further, in the Fifth Circuit—where a Plaintiff alleges that a First Amendment retaliation caused a chilling effect—any separate "chilled-speech claim . . . rises and falls with [the] retaliation claim." *Lowery v. Mills*, 157 F.4th 729, 741 (5th Cir. 2025). Since Plaintiff's retaliatory prosecution claim against Beckham fails, any chilling effect on her speech which stems from the prosecution is not actionable. *See id.* ("[No] binding case has recognized any freestanding chilled-speech claim distinct from [the] retaliation claim.").

In sum, Defendant Beckham is entitled to qualified immunity against all of Plaintiff's First Amendment claims because Plaintiff has not made out a single First Amendment violation against him. Plaintiff's retaliatory prosecution claim fails because of the independent intermediary doctrine. Her viewpoint discrimination claim fails because of the government speech doctrine. And her prior restraint claims fail as a matter of law. Finally, her chilling effect allegations do not constitute a valid claim or an actionable injury.

**ii. Defendant Gregory**

Plaintiff alleges that Defendant Gregory—as Trinidad's Chief of Police and Beckham's supervisor—authorized and directed Beckham's conduct. (Doc. No. 1, at 30.) Plaintiff alleges that Gregory selected a biased magistrate to sign the subject warrant, *id.* at 31–32, and that he authored or authorized the City's Facebook post warning the community of Trinidad about false emergency reports, *id.* at 16, 28, 34. Plaintiff asserts the same claims against Gregory that she did against Beckham: (1) unlawful arrest in violation of the Fourth Amendment, *id.* at 29–33, (2) retaliatory prosecution in violation of the First Amendment, *id.* at 23–27, and (3) a separate First Amendment violation arising from a combination of the retaliatory prosecution and the City's Facebook post, which Plaintiff claims was a speech-chilling viewpoint-discriminatory prior restraint. *Id.* at 25–27.

Defendants argue that Gregory is entitled to qualified immunity for any claim arising from Plaintiff's arrest or the subject Facebook post. Specifically, Defendants urge that (1) Plaintiff's Fourth Amendment unlawful arrest and First Amendment retaliatory prosecution claims depend on the lack of probable cause, (2) Plaintiff's arrest was supported by probable cause, (3) alternatively, Plaintiff's arrest was authorized by a warrant, which triggers the independent intermediary doctrine and shields Gregory from liability, (4) the narrow *Nieves* exception does not apply, and (5) therefore, Plaintiff fails at the first prong of qualified immunity. (Doc. No. 13, at 9–15.) Alternatively, Defendants argue that Gregory is entitled to qualified immunity for any claim stemming from the arrest for want of sufficient personal involvement. *Id.* at 13. Further, Defendants argue that Plaintiff has not stated a valid prior restraint or viewpoint discrimination claim. *Id.* at 15–17.

All of Plaintiff's claims against Gregory fail at the first prong of qualified immunity. First, to the extent Plaintiff's claims sound in vicarious liability, they are plainly not actionable. *See Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2001) ("Section 1983 does not create vicarious or respondeat superior liability."); *Doe v. Ferguson*, 128 F.4th 727, 733 (5th Cir. 2025) ("[E]ach Government official . . . is only liable for his or her own misconduct.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Second, to the extent Plaintiff asserts her claims directly against Gregory—not merely because of his supervisory role, but because of his own alleged misconduct—all the claims fail on the merits as discussed above. Even if Gregory selected a purportedly biased magistrate and directed Beckham to arrest Plaintiff, the independent intermediary doctrine defeats her Fourth Amendment unlawful arrest and First Amendment retaliation claims. And even if Gregory authored the City's Facebook post, Plaintiff's viewpoint discrimination claim fails because of the government speech doctrine. Meanwhile, her prior

restraint claims fail as a matter of law. And her chilling effect allegations are not actionable. Plaintiff cannot make out a single constitutional violation against Gregory on any of these theories, so Gregory is entitled to qualified immunity against all these claims.

**iii. Defendant Bannister**

Plaintiff alleges that Defendant Bannister "instigated and supported the retaliatory prosecution." Plaintiff asserts her prior restraint, viewpoint discrimination, and chilling effect allegations against Bannister also. (Doc. No. 1, at 25–27.)

Plaintiff fails to state a constitutional violation against Defendant Bannister; therefore, she is entitled to qualified immunity. As discussed above, the independent intermediary doctrine defeats any claim arising from the alleged unlawful nature of Plaintiff's arrest. Further—even if Plaintiff could overcome the independent intermediary doctrine—the claim(s) against Bannister could not stand because Plaintiff's bald, conclusory allegations do not demonstrate Bannister's personal involvement in the prosecution. Nor can Plaintiff state a viewpoint discrimination claim against Bannister because the Facebook post—as discussed above—was not a prior restraint. And even if it was, Plaintiff fails to show Bannister's personal involvement in the post. Bannister is entitled to qualified immunity.

**iv. § 1983 Conspiracy Against Bannister, Beckham, and Gregory**

Plaintiff asserts a § 1983 conspiracy claim against Defendants Beckham, Gregory, and Bannister. According to Plaintiff, Defendants "entered into an agreement" to silence her reporting about the City's water and punish her for her critical journalism. (Doc. No. 1, at 28–29.) Apparently, Defendants used the criminal prosecution as a pretext to "accomplish th[ese] unconstitutional ends and deter future reporting." *Id.* at 29.

Defendants argue that Plaintiff's § 1983 conspiracy claim fails because she (1) has not alleged a separate, actionable violation of § 1983, (2) fails to adequately plead an agreement, and (3) fails to overcome the intra-corporate conspiracy doctrine. (Doc. No. 21, at 11–12.)

Plaintiff's § 1983 conspiracy claim fails because she has not alleged a separate, actionable violation of § 1983. *See Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) ("[A] conspiracy claim is not actionable without an actual violation of section 1983.") (quoting *Pfannstiel v. Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds*, *Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)). As discussed above, all of Plaintiff's § 1983 claims fail at the first prong of qualified immunity because she cannot show an actionable violation of a constitutional right. Therefore, her § 1983 conspiracy claim fails as well. All individual defendants are entitled to qualified immunity here.

The Court need not consider Defendants' arguments regarding whether a conspiratorial agreement was or could have been formed. The Fifth Circuit has instructed that "only if [defendants'] state action is determined" to violate clearly established law should the district court "look to whether the officer's actions were taken pursuant to a conspiracy." *Pfannstiel*, 918 F.2d at 1187. Unless and until Plaintiff can overcome qualified immunity by showing that Defendants violated a clearly established federal right, the Court will not address whether Defendants conspired to do so. However, the Court notes—without deciding—that Plaintiff's allegations concerning an agreement appear to be quite conclusory, particularly with regards to Defendant Bannister's involvement.

**v. § 1985(3) Conspiracy Against Bannister, Beckham, and Gregory**

Plaintiff separately asserts a § 1985(3) conspiracy claim. Plaintiff alleges that Defendants Gregory, Beckham, and Bannister "conspired to deprive [her] of the equal protection of the laws and of equal privileges and immunities." (Doc. No. 1, at 29.) According to Plaintiff, Defendants' decision to charge and arrest her was "motivated by class-based animus against her as a journalist, critic of governmental authority, and member of a class of persons who publicly challenge official misconduct." *Id.*

Defendants argue that Plaintiff's § 1985(3) conspiracy claim fails because (1) such claims require racial animus, which Plaintiff has not alleged, and (2) under the intra-corporate conspiracy doctrine, Defendants cannot have conspired with themselves. (Doc. No. 13, at 17–19.)

Plaintiff's § 1985(3) claim fails because she has not alleged discrimination based on her race. To state a valid § 1985(3) conspiracy claim in the Fifth Circuit, the plaintiff must allege "racial animus." *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (quoting *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269–270 (1993) (declining to extend § 1985(3)'s scope beyond "race discrimination"); *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 835 (1983) (declining to affirm lower court's holding that § 1985(3) "reaches conspiracies other than those motivated by racial bias"). Plaintiff claims that the discrimination she faced was motivated by her status as a journalist and vocal government critic. That claim is plainly not cognizable in § 1985(3), so the Court need not consider Defendants' intra-corporate conspiracy arguments. All individual Defendants are entitled to qualified immunity here.

## II. Municipal Liability

Plaintiff also asserts a § 1983 municipal liability claim against the City of Trinidad. (Doc. No. 1, at 33.) Plaintiff alleges that Defendant Gregory established official policy for the City's Police Department by way of his decision to "investigate and prosecute" Plaintiff and threaten her "protected speech" on Facebook. *Id.* at 34. These actions were allegedly part of a City-wide "practice of retaliat[ion]" for speech. *Id.* at 35. Gregory also apparently failed to train police officers like Beckham on how to conduct themselves in a constitutionally permissible manner. *Id.* at 34–35. Plaintiff appears to assert four distinct theories of municipal liability (1) direct policy, (2) failure to train, (3) widespread custom and practice, and (4) ratification. *Id.* at 33–36.

Defendants argue that none of Plaintiff's municipal liability theories is adequately pleaded. (Doc. No. 13, at 19–24.) Defendants also urge that municipal liability cannot attach because "no City of Trinidad officer violated Plaintiff's rights." *Id.* at 20.

To state a § 1983 municipal liability claim, Plaintiff must plead three elements: (1) "a policymaker," (2) "an official policy," and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Sciences*, 436 U.S. 658, 694 (1978)). These requirements ensure that municipalities are held liable only when they are blameworthy, not merely because they employ a wrongdoer. *Monell*, 436 U.S. 694–95. Plaintiffs have used—and courts have adopted—various theories which prove these elements in different ways. *See Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 811 (5th Cir. 2017) (failure-to-train); *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (single incident by "final policymaker" or existence of formal policy "officially adopted and promulgated by lawmakers or others with policymaking authority"); *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 168–69 (5th Cir. 2010) (contrasting formal or "official policy" and

"customary policy" which "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct") (citation omitted); *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (ratification theory).

Plaintiff's municipal liability claim fails because she has not alleged an actionable violation of federal rights. Among the requirements to state a valid municipal liability claim, Plaintiff must show that an actual violation of a federal right occurred. *See Cambric v. City of Corpus Christi*, 170 F.4 321, 324 (5th Cir. 2026); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2019); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Yet, as stated herein, all of Plaintiff's claims fail. Without any actionable violations, there cannot be municipal liability.

The Court also notes—without deciding—that many of Plaintiff's municipal liability theories appear to be highly conclusory. For instance, Plaintiff's failure-to-train theory concludes that the applicable legal standard is met: "Gregory failed to provide [the] officers . . . with constitutionally adequate training." (Doc. No. 1, at 34); *see Mitchell v. Tom Green Cty. Jail*, No. 24-10920, 2025 U.S. App. LEXIS 23147, at *3 (5th Cir. Sept. 8, 2025) ("[V]ague and conclusory allegations [are] insufficient to allege any deficiency in supervision or training constitut[ing] deliberate indifference."). Plaintiff does allege that Beckham admitted "he does not consider current case law regarding the statutes he enforces." (Doc. No. 1, at 34.) But that admission was made on May 13, 2026—ostensibly after Plaintiff's arrest—so it likely fails to establish the City's deliberate indifference during the relevant period. *Id.* at 31. The foregoing is only one example, but the Court will not belabor the point: In amending her complaint, Plaintiff should consider the conclusory nature of many of her municipal liability allegations.

## III. Injunctive and Declaratory Relief

Plaintiff also pleads two causes of action labelled "Declaratory Relief" and "Injunctive Relief." (Doc. No. 1, at 36, 37.) Declaratory judgments and injunctions are remedies, not causes of action. *See, e.g.*, *Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) ("[A]n injunction is a remedy that must be supported by a cause of action."); *Harris Cty. Tex. V. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[T]he Declaratory Judgment Act alone does not create a federal cause of action."). In amending the complaint, Plaintiff's counsel is admonished to not frivolously re-plead these remedies as causes of action.

## IV. Leave To Amend

Finally, Plaintiff argues that—if the Court finds any of her claims deficient—leave to amend should be granted. (Doc. No. 16, at 42–43.) Plaintiff proposes the following amendments: (1) "additional facts concerning the warrant application and the magistrate's deliberations," (2) greater detail concerning the allegations against Bannister, (3) "additional incidents bearing on the City's practice," (4) "the prosecutor's refusal to pursue the charge and the grand jury's refusal to indict," and (5) "the change in [City] personnel as a result of the fallout" from the events underlying Plaintiff's claims. *Id.* at 43.

Defendants argue that leave should be denied because amendment would be futile. (Doc. No. 21, at 14.) Defendants claim that (1) "the magistrate's deliberations are irrelevant because probable cause is judged within the affidavit's four corners, absent taint," (2) additional details concerning Bannister "cannot supply a case holding that [she] violates the Constitution by encouraging police investigation," (3) and "later incidents cannot be the moving force behind an earlier injury." *Id.*

Federal Rule of Civil Procedure 15(a) controls whether leave to amend should be granted when the deadline for amending pleadings has not passed. *Waterman v. McKinney Indep. Sch. Dist.*, 642 F. App'x 363, 368 (5th Cir. 2016). Rule 15(a) directs courts to "freely" grant leave "when justice so requires." *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000) ("Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.") (internal quotation marks omitted) (citation omitted). Courts typically grant leave unless one or more of the following is present: (1) "undue delay, bad faith, or dilatory motive," (2) "repeated failure to cure deficiencies by amendments previously allowed," (3) "undue prejudice to the opposing party by virtue of allowance of the amendment," or (4) "futility of [the] amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds no undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies. Plaintiff's request for leave is timely, as the Court has not yet issued a deadline for amending pleadings. *See Ponder ex rel. H.P., L.P. v. Aus. Montessori Sch., Inc.*, No. 1:25-cv-02020 (ADA-SH), 2026 U.S. Dist. LEXIS 116824, at *7 (E.D. Tex. Apr. 21, 2026) ("Federal courts within the Fifth Circuit have found that there is a presumption of timeliness if the movant files its motion to amend by the court-ordered deadline.") (citation omitted). And there is no evidence—or any argument from Defendants—that Plaintiff's request for leave is designed to harass them or intentionally cause delay. Similarly, there is no evidence or argument that Plaintiff's amendments would cause undue prejudice. The proposed amendments would not "fundamentally alter the nature of the case," *Goff v. Ocean Harbor Cas. Ins. Co.*, No. 24-1935 (DPC), 2024 U.S. Dist. LEXIS 226729, at *6 (E.D. La. Dec. 13, 2024), nor would they require the parties to "reopen discovery . . . [at] considerable delay and expense," *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th

Cir. 2004). Lastly, there is no repeated failure to cure deficiencies because the Court has not previously granted Plaintiff leave to amend. The above factors favor granting leave.

The Court will not consider the futility of amendment here. Futility analysis would require the Court to apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling*, 234 F.3d at 872. A decision would thus "necessarily involve the same fact-intensive considerations as contained in a motion to dismiss." *Saldivar v. Johnson*, No. 13-64 (RGM), 2014 U.S. Dist. LEXIS 193318, at *3 (S.D. Tex. Feb. 13, 2024). But here, Plaintiff has not yet filed her first-amended complaint. And most of Plaintiff's constitutional claims are highly fact-intensive and context-dependent. Since it is unclear precisely what new facts the amended complaint will present, applying Rule 12(b)(6) at this juncture would be premature and unwise. *See Taylor v. Ochsner Clinic Found.*, No. 24-1872 (DPC), 2026 U.S. Dist. LEXIS 129033, at *12 (E.D. La. June 10, 2026) ("[C]ourts often defer addressing the futility issue in relation to a Rule 15 motion to allow resolution of the issue in the context of a Rule 12 motion.") (citing *MedARC, LLC v. Aetna Health Inc.*, No. 3:20-cv-3646 (ICR), 2022 U.S. Dist. LEXIS 43568, at *4–5 (N.D. Tex. March 11, 2022)).

However, the Court notes that some of Plaintiff's claims—such as her § 1985(3), prior restraint, and viewpoint discrimination theories—are plausibly futile on their face. In considering whether to re-plead these claims, Plaintiff's counsel is reminded of his Rule 11 obligations. *See* Fed. R. Civ. P. 11(b)–(b)(2) ("By presenting to the court a pleading . . . an attorney . . . certifies that . . . the claims . . . are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.").

Additionally, the Court admonishes Plaintiff's counsel concerning the length of the original complaint. In amending, Plaintiff must comply with the page limits set forth by E.D. Tex. Local Rule CV-3(d).

**CONCLUSION**

Therefore, the Court **RECOMMENDS** that Defendants' motion to dismiss (Doc. No. 13) be **GRANTED** as follows: (1) Counts I, II, III, and IV should be **DISMISSED** without prejudice because Defendants Bannister, Beckham, and Gregory are entitled to qualified immunity, (2) Counts V, VI, and VII should be **DISMISSED** without prejudice for failure to state a claim. The Court **FURTHER RECOMMENDS** that Plaintiff be granted leave to amend her complaint.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the district judge of those findings, conclusions and recommendations. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days). Except upon grounds of plain error, failure to file written objections will also bar the non-objecting party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Id.*

**So ORDERED and SIGNED this 1st day of October, 2026.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE